```
                IN THE UNITED STATES DISTRICT COURT
                    FOR THE DISTRICT OF COLUMBIA

- - - - - - - - - - - - - - - -x
CAROL WILD SCOTT,
                                       CA No: 1:22-cv-00601-CRC
            Plaintiff,
                                       Washington, D.C.
                                       Wednesday, July 26, 2023
vs.                                    3:06 p.m.

WASHINGTON METROPOLITAN AREA
TRANSIT AUTHORITY,

            Defendant.
- - - - - - - - - - - - - - - -x
_____
                 TRANSCRIPT OF STATUS CONFERENCE
         HELD BEFORE THE HONORABLE CHRISTOPHER R. COOPER
                    UNITED STATES DISTRICT JUDGE
_____

APPEARANCES:

For the Plaintiff:        **PATRICK MICHAEL REGAN, ESQ.**
                          **REGAN ZAMBRI & LONG, PLLC**
                          1919 M Street, NW, Suite 350
                          Washington, DC 20036
                          (202) 463-3030
                          pregan@reganfirm.com


For the Defendant:        **BRENDAN HAYES CHANDONNET, ESQ.**
                          **WASHINGTON METROPOLITAN AREA**
                          **TRANSIT AUTHORITY**
                          Office of General Counsel 7E
                          300 7th Street SW
                          Washington, DC 20024
                          (202) 962-2805
                          bchandonnet@wmata.com

Court Reporter:                Lisa A. Moreira, RDR, CRR
                               Official Court Reporter
                               U.S. Courthouse, Room 6718
                               333 Constitution Avenue, NW
                               Washington, DC  20001
                               (202) 354-3187
```

P R O C E E D I N G S

THE COURTROOM DEPUTY: Your Honor, we're on the record for Civil Case 22-601, *Carol Wild Scott vs. Washington Metropolitan Transit Authority*.

Counsel, please approach the lectern and identify yourselves for the record starting with the plaintiff.

MS. REGAN: Good afternoon, Your Honor; Patrick Regan on behalf of the plaintiff, Carol Scott.

THE COURT: Good afternoon, Mr. Regan. Why don't you stay up there.

MR. CHANDONNET: Good afternoon, Your Honor; Brendan Chandonnet on behalf of defendant WMATA.

THE COURT: Why don't both of you gentlemen stay up there.

Okay. This is our post-discovery status conference. Where do things stand?

Let's start with you, Mr. Regan.

MS. REGAN: So, Judge, we're ready to move forward with pretrial and trial. I've talked to counsel, and they feel that they need to file a dispositive motion, and we've discussed the schedule on that.

And here's the glitch from our end, is that because of internal procedures at WMATA, they can't proceed to mediation until there's a ruling on the dispositive motion. So we've talked about a schedule, but that's -- and

```
 1    we've agreed to a mediator, but that's sort of like where we
 2    are right now.
 3              THE COURT:  So just thinking about other WMATA
 4    cases, I don't specifically recall, but I don't remember
 5    hearing that that's the policy of WMATA; to make me rule on
 6    summary judgment before you even --
 7              MR. CHANDONNET:  In this case, Your Honor, your
 8    ruling on summary judgment is determinative on whether we --
 9    on whether we settle or not.  If you are to deny the motion,
10    then we'd be very motivated to go to and fulfill mediation.
11    However, we feel that this is a case that potentially could
12    be disposed of at the motions.
13              THE COURT:  Give me a preview.  This is not a
14    summary judgment argument, and I won't hold you to it, but
15    why do you feel there's no dispute of material fact?
16              MR. CHANDONNET:  We feel that this case could be
17    argued like a bus jolt case, except it's occurring on a
18    train.
19              THE COURT:  Except what?
20              MR. CHANDONNET:  Except it occurred on a train
21    instead of a bus.  We would use the same line of reasoning
22    that we do -- the Fells/Wiggins line of reasoning -- for
23    buses and import that in the rail context.
24              THE COURT:  Okay.  Why don't you spin that out
25    for me a little bit.  I'm not as steeped as you are on
```

1    liability -- negligent liability issues here in D.C.  We
2    don't get a whole lot of these cases because of the
3    contributory negligence rule.
4            But what's the analogy, and what's the law?
5            MR. CHANDONNET:  On this case, Your Honor, once a
6    plaintiff has both feet firmly planted on a common carrier,
7    the common -- at that point the plaintiff is responsible to
8    protect him or herself against jerks, jolts, starts, and
9    stops that are incident to the normal operation of a
10   vehicle.
11           In this case, plaintiff was seated.  The train
12   came to a stop.  Before the doors opened, she got up.  The
13   train moved.  She was not holding on to anything at that
14   time, and she fell, injuring herself.  And we'd like the
15   opportunity to brief that issue.
16           THE COURT:  Is there a dispute on those facts,
17   Mr. Regan?
18           MS. REGAN:  No, Your Honor, there is not.
19           THE COURT:  Okay.  So what's the law based on
20   those facts?
21           MR. CHANDONNET:  I think --
22           MS. REGAN:  Go ahead.
23           MR. CHANDONNET:  The law in -- WMATA feels that
24   the law is the same as with bus law.  It's plaintiff's
25   responsibility to brace him or herself against these

1    movements of the train.  The law is developed in the bus
2    context.  And if the plaintiff does not do that, then WMATA
3    wins as a matter of law.
4              THE COURT:  Okay.  So there's no subway-specific
5    case law, to your knowledge?
6              MR. CHANDONNET:  I need to do -- obviously some
7    research needs to be done in order to move that over.
8              THE COURT:  Okay.  Assuming there's not,
9    Mr. Regan, why isn't the bus analogy appropriate here?
10             MS. REGAN:  Judge, because --
11             THE COURT:  Share the microphone so that --
12             MR. CHANDONNET:  Sure, I'm sorry.
13             THE COURT:  -- the court reporter can get you.
14             MS. REGAN:  So here's what happens.  The train
15   comes to a stop.  She's seated.  There's no way for her to
16   get up and exit without her obviously standing and moving.
17             WMATA conducted an internal investigation.  They
18   concluded -- every witness said the train had come to a
19   complete stop.  Other people had started to move.
20             They started to.  It all of a sudden jerked
21   forward.  She fell, fractured her hip, and had to have
22   surgery and $300,000 of medical expenses.
23             THE COURT:  But what I'm hearing from your
24   colleague is, given those facts, if that had happened on a
25   bus, the law would be clear that WMATA has no liability

1    because that's what the cases say, right?
2            Is that not true, or is that --
3            MS. REGAN:  There's not a single case that says
4    that that is on the subway.  There is a line of cases, but
5    I'm not sure it's as broad as counsel is making it.
6            THE COURT:  Okay.
7            MS. REGAN:  Okay.  This was -- everybody on the
8    train assumed the train had come to a stop.
9            And his argument on contributory negligence is she
10   wasn't holding on to something when the train jerked
11   forward.  I don't think that they -- that the Court can rule
12   as a matter of law that she was acting as an unreasonable
13   person under the circumstances, so I don't think -- or
14   assumption of risk.  I've been told they're going to argue
15   contributory as a matter of law, assumption of risk as a
16   matter of law.
17           I think this will be relatively easy for the Court
18   to dispose of, but, you know...
19           THE COURT:  All right.  Well, I'm not familiar
20   with the law.  I'm happy to obviously review anything that
21   you all submit.  It takes two to tango on mediation.  If
22   that's the policy, that's the policy.
23           So do you want to submit a proposed summary
24   judgment briefing schedule?
25           MR. CHANDONNET:  We're happy to discuss it right

```
 1    now.  We have spoken in advance of this hearing, Your Honor.
 2              THE COURT:  Okay.
 3              MR. CHANDONNET:  October 2nd for WMATA's brief;
 4    two weeks later, October 16th for plaintiff's opposition;
 5    October 23rd for WMATA's reply, if you are so inclined as to
 6    accept one.
 7              THE COURT:  All right.  Sounds fine to me.  That's
 8    more aggressive than I usually get so music to my ears --
 9              MR. CHANDONNET:  Okay.
10              THE COURT:  -- and we will go from there.
11              MS. REGAN:  Okay.  Thank you, Your Honor.
12              MR. CHANDONNET:  Thank you, Your Honor.
13              THE COURT:  Anything else?
14              MR. CHANDONNET:  No.  That's all, Your Honor.
15              THE COURT:  All right.  We're adjourned, and we
16    will enter that summary judgment schedule.
17                   (Whereupon the hearing was
18                      concluded at 3:12 p.m.)
19
20
21
22
23
24
25
```

**CERTIFICATE OF OFFICIAL COURT REPORTER**

     I, LISA A. MOREIRA, RDR, CRR, do hereby certify that the above and foregoing constitutes a true and accurate transcript of my stenographic notes and is a full, true and complete transcript of the proceedings to the best of my ability.

    Dated this 31st day of July, 2023.

                                  /s/Lisa A. Moreira, RDR, CRR  
                                  Official Court Reporter  
                                  United States Courthouse  
                                  Room 6718  
                                  333 Constitution Avenue, NW  
                                  Washington, DC 20001