# Exhibit 6



# Transcript of Clev Bernard Ibanez Bennett, Designated Representative

**Date:** February 9, 2023
**Case:** Scott -v- Washington Metropolitan Area Transit Authority

**Planet Depos**
**Phone:** 888-433-3767
**Fax:** 888-503-3767
**Email:** transcripts@planetdepos.com
www.planetdepos.com

Transcript of Clev Bernard Ibanez Bennett, Designated Representative  1 (1 to 4)
February 9, 2023

```
                                          1
 1        UNITED STATES DISTRICT CIRCUIT COURT
 2           FOR THE DISTRICT OF COLUMBIA
 3   ------------------------X
 4   CAROL WILD SCOTT,
 5          Plaintiff,
 6          vs.              Civil Action No.
 7   WASHINGTON METROPOLITAN  22-cv-00601 (CRC)
 8   AREA TRANSIT AUTHORITY,
 9          Defendant.
10   ------------------------X
11
12
13   30(b)(6) DEPOSITION OF CLEV BERNARD IBANEZ BENNETT
14               Conducted Remotely
15            Thursday, February 9, 2023
16                2:58 p.m. Eastern
17
18
19
20   Job No.: 480571
21   Pages 1 - 54
22   Reported by: Cynthia Powers
```

```
                                          2
 1          A P P E A R A N C E S
 2
 3   ON BEHALF OF THE PLAINTIFF:
 4        Christopher J. Regan, Esquire
 5        Regan, Zambri & Long, PLLC
 6        1919 M Street, N.W., Suite 350
 7        Washington, D.C. 20036
 8        (202) 463-3030
 9        cregan@reganfirm.com
10
11   ON BEHALF OF THE DEFENDANT:
12        Brendan H. Chandonnet, Esquire
13        Nicholas L. Phucas, Esquire
14        Washington Metropolitan Area Transit
15        Authority
16        Office of General Counsel
17        300 7th Street, S.W.
18        Washington, D.C. 20004
19        (202) 962-1234
20        bchandonnet@wmata.com
21
22
```

```
                                                          3
 1              I N D E X
 2                                              Page
 3   Examination by Mr. Regan                    5
 4
 5
 6             E X H I B I T S
 7                (Attached)
 8   Number                                     Page
 9   Exhibit 1   Amended Notice of 30(b)(6)      5
10               Deposition
11   Exhibit 2   Incident/Accident Report,      5/8
12               9/23/19
13   Exhibit 3   Incident Report, 9/23/19       5/18
14   Exhibit 4   E-Mail, Graves to WMATA        5/24
15               WMSC Notification, 9/23/19
16   Exhibit 5   Press Release, 3/4/19           5
17   Exhibit 6   Press Release, 6/19/19          5
18   Exhibit 7   E-Mail, 3/2/19, Bates          5/51
19               No. WMATA000060
20   Exhibit 8   Rail Signal Safety Updates      5
21   Exhibit 9   Station Overrun Report,         5
22               4/20/19
```

```
                                                          4
 1             E X H I B I T S
 2               (Continued)
 3   Number                                     Page
 4   Exhibit 10  Station Overrun Report,         5
 5              4/28/19
 6   Exhibit 11  RTRA Training Request Form      5
 7   Exhibit 12  Investigation Report           5/34
 8   Exhibit 13  E-Mail, Bumbry to Alston       5/46
 9              and others, 2/26/19
10   Exhibit 14  Trains Certification Result    5/49
11   Exhibit 15  Standard Operating Procedure    5
12              Nos. 40.5 and 50.5
13   Exhibit 16  Washington Post Article,        5
14              6/26/18
```

**Page 29**

1    MR. CHANDONNET: He doesn't know, Chris.
2   BY MR. REGAN:
3    Q.  You don't know where Mr. Graves got this
4   statement of fact that he put forth to the WMSC?
5    A.  No.
6    Q.  You don't know whether WMATA ever
7   supplemented or corrected that information
8   provided to WMSC, do you?
9    A.  No.
10   Q.  Okay.  Do you know whether it's
11  important to provide information the full
12  information of what happened to Ms. Scott to the
13  WMSC?
14   A.  Yes.
15   Q.  And is it?
16   A.  Would you phrase that --
17   Q.  The first question, I guess, was:  Do
18  you know whether it's important to provide full
19  information to WMSC?  You said, "Yes."  And the
20  follow-up question is:  It is important to provide
21  full information of what happened to WMSC; right?
22   A.  Yes.

**Page 30**

1    Q.  As we sit here today, is it WMATA's
2   position that Ms. Scott did anything wrong to lead
3   to her fall?
4    MR. CHANDONNET: Objection.  I'm going
5   to direct him not to answer any questions that
6   deal with legal strategy.
7    MR. REGAN: Okay.  We'll agree to
8   disagree.  If you've instructed him not to answer
9   that question, that's fine.
10   MR. CHANDONNET: Thank you.
11  BY MR. REGAN:
12   Q.  Mr. Bennett, are there any facts in any
13  of the documents that you reviewed, any of the
14  incident reports prepared by WMATA after what
15  happened, that suggest Ms. Scott did anything
16  wrong?
17   MR. CHANDONNET: Objection.  I'm going
18  to ask -- instruct him not to answer that as well.
19  BY MR. REGAN:
20   Q.  Okay.  Is WMATA aware of any evidence
21  that Ms. Scott stood up while the train was in
22  motion?

**Page 31**

1    THE WITNESS: You want me to answer?
2    MR. CHANDONNET: You can answer if you
3   know.
4    A.  Say it one more time, I'm sorry.
5   BY MR. REGAN:
6    Q.  Yeah, is WMATA aware of any information
7   at all demonstrating that Ms. Scott stood up while
8   the train was in motion?
9    A.  I'm not aware of any.
10   Q.  Okay.  Well, you're speaking on behalf
11  of WMATA today.  You've investigated, you've
12  looked at all the documents, right, all the
13  incident reports.  You've actually gone and
14  reviewed all those things.  And you, speaking as
15  WMATA, are not aware of any evidence; right?
16   A.  Correct.
17   Q.  One of the witnesses explicitly noted
18  that the train operator never made any
19  announcement that the train was going to be in
20  motion again.  Do you remember that or do you want
21  me to pull it up?
22   A.  I remember -- I remember seeing that,

**Page 32**

1   yes.
2    Q.  Is WMATA aware of any evidence that
3   would contradict that; in other words, is there
4   any evidence that WMATA is aware of that the train
5   operator announced the train would be moving
6   before she moved it forward again?
7    A.  No.
8    Q.  Bear with me one minute.  All right.  We
9   are back to Exhibit 3, which begins on WMATA 18.
10  Do you still have that in front of you?
11   A.  I do.  I just have to go to it.  All
12  right.
13   Q.  All right.  So about halfway down that
14  page, just underneath that table, there's a line
15  that says, "Incident Type," and it says,
16  "Slip/fall, vehicle in motion."  See that?
17   A.  Yes.
18   Q.  Is that how all incidents, such as the
19  one that happened to Ms. Scott, are classified,
20  "Slip/fall, vehicle in motion"?
21   A.  I can't recall because I haven't done an
22  SMS recently.  We have a drop down.  So I have to