IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| CAROL WILD SCOTT, | : |
| Plaintiff, | : |
| v. | : |
| | : CASE NO.: 1:22-cv-00601 CRC |
| WASHINGTON METROPOLITAN AREA TRANSIT AUTHORITY, | : |
| Defendant. | : |

**DEFENDANT'S REPLY BRIEF IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT AND OPPOSTION TO PLAINTIFF'S CROSS MOTION FOR SUMMARY JUDGMENT**

A.   <u>Reply Brief</u>

Plaintiff begins her opposition to Defendant's motion for summary judgment without citing to case law, or opposing facts supporting her position, but by making an emotional plea to this Court through a recitation of alleged damages and a plea to punish WMATA for its purported failings.  While Plaintiff's injuries are unfortunate, WMATA is not the insurer of the public's safety, and, as clearly set forth in the Pattern Jury Instructions for the DC Superior Court:

> **[t]he mere fact that an accident happened does not mean that any party to this case was negligent. The law presumes that each party used reasonable care unless and until one party proves otherwise. The burden of proof is on the party alleging negligence to overcome this presumption of reasonable care. To carry this burden, the party alleging negligence must prove that it is more likely than not that the negligence caused the accident.**

*(Standardized Civil Jury Instructions for the District of Columbia § 5.20 (Richard W. Stevens ed., Matthew Bender & Co., 2023)(LEXIS))*.  The gravamen of plaintiff's opposition is that: (1) a train is not a bus, therefore DC common carrier law as it applies to jerks and jolts is inapplicable;  (2) the train moved in an extreme way; and (3) WMATA did not follow the national standard of care.

1

1. **DC common carrier law about jerks and jolts applies to trains**

Plaintiff cites no precedent to establish that the analysis of this case should fall outside of traditional DC common carrier law as it pertains to starts, stops, jerks and jolts. She cites no cases which confirm that a train should be considered different from a bus or a streetcar. Plaintiff tries to distinguish the cases in Defendant's motion by arguing that those case deal with "above-ground" transportation. But it is common knowledge that WMATA trains operate above ground and plaintiff boarded the train on that day in an outdoor, above ground station (Vienna). (SUMF ¶ 1). Plaintiff wants this Court to adopt the position that a train is a different form of public transport, simply because she says so. This is despite plaintiff's "expert" relying on general common carrier law when reaching his conclusions.[1] Ultimately, whether a vehicle is a bus or a streetcar or train is of no consequence: DC common carrier law still applies. Indeed, "[w]e mention in passing that though some of the cases we have cited deal with streetcars rather than buses, the basic rules of liability are the same with reference to both types of carriers." *Wiggins v. Cap. Transit Co.,* 122 A.2d 117, 119 (D.C. 1956)). Further, the DC Circuit has specifically identified trains in the context of long-standing DC jerk jolt law. As stated in *Adams v. Washington & G.R. Co.*,

> "The plaintiff failed to prove any negligence in the operation of the **train** or any defect in the track or roadbed which would produce an unusual jerk or jolt… He cannot complain of the ordinary and necessary jerking or lurching of the car, especially when he was familiar with it."

9 App. D.C. 26, 29 (D.C. Cir. 1896) (emphasis added).

2. **The train did not move in such an extreme way as to preclude summary judgment**

---

[1] However, as stated in greater detail below, plaintiff's "expert" report relies on incorrect or inapplicable standards based on the law of this jurisdiction.

Case law is clear with respect to what constitutes an unusual or extraordinary movement of a common carrier vehicle. An inference of negligence must be more than mere descriptive adjectives and conclusions. *See, e.g.*, *Wiggins, supra* at 118. "[S]tatements that a streetcar started violently, started with a violent jerk, … and the like, are not of themselves sufficient to show negligent operation … [and] there must be evidence inherently establishing that the occurrence was of an unusual and extraordinary character, or evidence of its effect on other passengers sufficient to show this." *Id*; (quoting *Endicott v. Philadelphia Rapid Transit Co.*, 318 Pa. 12, 177 A. 17, 18 (1935) (testimony that passengers who were standing "whirled around" or "twirled around" on supporting straps was not sufficient to show an extraordinary jolt or jerk)). There is no evidence that any of the other passengers were affected by the starting of this train. Plaintiff offers no evidence, other than mere adjectival descriptions, and the fact that Plaintiff fell, as evidence that the train's movement was unusual or extraordinary.

Plaintiff tries to support her position by including multiple witness statements which describe how plaintiff fell. In any event, they are inadmissible hearsay that cannot be used to defeat summary judgment. "Inadmissable hearsay may not be considered when evaluating the merits of a motion for summary judgment nor may any documents that are not (or cannot be) properly authenticated." *Ragsdale v. Holder*, 688 F. Supp. 2d 7 23-24 (D.D.C 2009). Witness statements are inadmissible hearsay and "material that is inadmissible will not be considered on a motion for summary judgment". *Geiserman v. MacDonald,* 893 F.2d 787, 793 (5th Cir.1990).

However, even if the statements were admissible, they still do not meet the standard.

> 'It is true one of the witnesses said the car 'jerked hard' but this expression alone, considered in connection with the facts of the case, cannot be regarded as having sufficient probative force to go to the jury as tending to show that the 'jerk' was unusual or extraordinary.' And in *Taylor v. Westchester Street Transp. Co*., 276 App.Div. 874, 93 N.Y.S.2d 395, the

3

> court held that the plaintiff's testimony that the bus 'lurched forward' and 'snatched forward' was insufficient to establish negligence without other tangible proof that the bus started with unusual or unnecessary force, and without other evidence of acts or physical facts to warrant such a finding. And where there was no evidence of other circumstances tending to establish the occurrence as one of unusual or extraordinary character, it has been held that verdicts should be directed for the carrier.

*Wiggins, supra*, at 118-119.

In another attempt to show that the train moved improperly, plaintiff's expert, Dr. Berkowitz uses five pages of his report to discuss "jerk rate". But this discussion exists in a vacuum as there is no objective evidence in the record about how the train at issue moved. No calculations were performed and no measurements were taken or examined about the subject train or incident in question. It is inconceivable that a scientific conclusion could be drawn regarding the nature of the train's movement in the absence of any such evidence.

Summary judgment is thus warranted.

3. **Plaintiff does not articulate a national standard of care which WMATA violated.**

Plaintiff retained an expert and produced an expert report on which he relies to oppose WMATA's motion. Fed. R. Civ. P. 702(a) permits expert testimony if scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue. However, Plaintiff's expert report is based on standards that are either incorrect, or misstate the law of this jurisdiction, and therefore cannot help the trier of fact understand the relevant issues.

To arrive at the necessary "national standard of care", one element on which Plaintiff's expert relies is "Common Carrier Law". *See* Berkowitz report at 15. Dr. Berkowitz states, with no support, that "WMATA owes a higher degree of care to ensure that their passengers do not get injured". *Id*. For District of Columbia law, that is patently incorrect. It is well established in this

4

jurisdiction that a common carrier such as WMATA must use reasonable care in carrying its passengers. *See, e.g.*, *WMATA v. Johnson*, 726 A.2d 172, 177 (D.C. 1999)(en banc); and *District of Columbia Transit System v. Carney*, 254 A.2d 402, 403 (D.C. 1969). To use reasonable care means to act as a reasonable person would under the circumstances. *Id*. This is unlike the neighboring jurisdictions of Virginia and Maryland, which hold common carriers to the highest duty of care in the carrying of its passengers.

"Expert testimony is not sufficient if it consists merely of the expert's opinion as to what he or she would do under similar circumstances." *Briggs v. WMATA,* 481 F.3d. 839, 846 (D.C. Cir. 2007). "Nor is it enough for the expert to declare that the [defendant] violated the national standard of care." *Id*. "[T]he expert must clearly relate the standard of care to the practices in fact generally followed by other comparable … facilities or to some standard nationally recognized by such units." *Id*. To the extent that Dr. Berkowitz relies on WMATA's internal procedures to establish the national standard of care, it fails. Plaintiff cannot use WMATA's standard operating procedures and internal policies to establish or serve as the standard of care necessary to prove negligence. *See, e.g.*, *Varner v. District of Columbia*, 891 A.2d 269, 270 (D.C. 2006); *see also Briggs, supra* at 846.

Plaintiff's expert failed to cite to other transit systems, and their specific policies, that would have potentially set forth a national standard of care as to the movement of a train. Where "the defendant is alleged to have failed to protect the plaintiff from harm, the expert must clearly articulate and reference the standard of care by which the defendant's actions can be measured" and "must show that the standard is accepted in the industry." *Beckwith v. Interstate Mgmt. Co., LLC*, 82 F. Supp. 3d 255, 262 (D.D.C. 2015), citing *Varner*, 891 A.2d at 269; *Novak v. Cap. Mgmt. & Dev. Corp.*, 570 F.3d 305, 313 (D.C. Cir. 2009), citing *Pannell v. District of Columbia*, 829

A.2d 474, 479-480 (D.C. 2003), and *Clark v. District of Columbia*, 708 A.2d 632, 635 (D.C. 1997). The expert must support a purported standard of care by showing that it has been accepted as controlling for operation of facilities and enterprises similar to the defendant's facilitates and enterprises. *See Novak*, 570 F.3d at 313. A standard of care must be national in scope and may not rest solely upon local custom. *See, e.g., Capitol Hill Hospital v. Jones*, 532 A.2d 89, 93-94 (D.C. 1987) (refusing defendant's request for jury instruction that the proper standard of care is that followed in the local D.C. area); *Travers v. District of Columbia*, 672 A.2d 566, 569 (D.C. 1996) (rejecting testimony about local practices for avoiding blood clots after surgery, even those required to meet national standard, as basis for enunciation of national standard of care).

  The courts in this jurisdiction have repeatedly removed cases from jury consideration because of plaintiffs' failure to enunciate a national standard of care based on actual practices of similarly situated defendants. *See, e.g., Clark*, 708 A.2d at 635, *citing Messina v. District of Columbia*, 663 A.2d 535, 538 (D.C. 1995); *District of Columbia v. Carmichael*, 577 A.2d at 315 (Plaintiff's failure to enunciate national standard of care for preventing entry of contraband weapons into maximum security prison); and *District of Columbia v. Moreno*, 647 A.2d 396, 400-401 (D.C. 1994). In *Clark v. District of Columbia*, the plaintiff sued the District of Columbia over the suicide of her son, a fourteen-year-old resident of the District's Receiving Home for Children. *See Clark*, 708 A.2d 632, 633-634 (D.C. 1997). Plaintiff instituted a wrongful death suit, arguing that the District was negligent by not employing a more stringent suicide prevention plan. *See id.* On plaintiff's appeal, the D.C. Court of Appeals affirmed the trial court's entry of a directed verdict, holding that the case was improper for jury consideration of negligence. *See id.* at 636-637. The Court of Appeals explained its rationale by underscoring the requirement, not met in the case, that expert testimony must "clearly relate the standard of care into the [suicide prevention]

practices in fact generally followed by other comparable governmental facilities or to some standard nationally recognized by such units." *Id.* at 635. Further, in *Briggs v. WMATA*, the D.C. Circuit held that plaintiff's expert did not demonstrate a national standard despite his assertions that a particular lighting concept is "widely used … in security design and practice," and that the OSHA standards "have been used for years throughout the United States in addressing robbery prevention in a wide variety of retail stores and facilities" 481 F.3d 839, 847 (D.C. Cir. 2007).

Dr. Berkowitz has been stricken by this Court previously, in a case involving DC jerk jolt law, on the same grounds. In *Robinson v. WMATA*, 941 F. Supp. 2d 61 (D.D.C. 2013), this Court held that:

> Dr. Berkowitz did not, however, point to any other transit authority that instructs bus drivers to use the internal mirrors to check the status of their passengers before releasing the brakes. Nor did he cite any authority to support his conclusion that this instruction represents a national standard that is generally followed by experienced bus operators, rather than an aspirational practice. Instead, Dr. Berkowitz relied exclusively on WMATA's own SOPs. Such reliance is insufficient to establish a national standard of care. *See Varner v. Dist. of Columbia*, 891 A.2d at 269-70; *Clark v. Dist. of Columbia*, 708 A.2d at 636-637.
>
> Second, Dr. Berkowitz stated that the bus operator should make an announcement to passengers when he intends to release the brakes and proceed forward. June 6 AM Trial Tr. 67, 71, 105. He conceded, however, that this policy is not included in WMATA's rules and regulations or in its SOPs. *Id.* at 68-69, 71. In addition, he failed to identify any other large transit agency or bus company that has or had a policy of making such announcements, although he stated that "a lot of bus companies do do that." *Id.* at 71.
>
> Third, Dr. Berkowitz stated that the driver should start and stop gradually and operate the bus in a smooth manner, again citing WMATA's SOPs. June 5 PM Trial Tr. 80-81, 91-94, 105; *see also* Pl.'s Ex. 62 (WMATA SOPs Regarding Onboard Bus); Pl.'s Ex. 63. Again, he did not reference the standards or policies of any other major transit agency. Nor did he explain why the directions in the SOPs should be regarded as establishing a national standard of care for negligence purposes, rather than as aspirational guidance.
>
> Despite the requirement under District of Columbia law that an expert must "clearly relate the standard of care to the practices in fact generally followed by other

7

> comparable governmental facilities or to some standard nationally recognized by such units," *Clark v. Dist. of Columbia*, 708 A.2d at 635, Dr. Berkowitz failed to show that the guidance he identified in WMATA's SOPs, rules and regulations, and training modules reflected a national standard of care. Instead, he simply explained that "in the area of transit, we've come to a lot of consensuses. And as a result of these consensuses of what should be a safe operation, we have these standards of care, which have been basically adopted in similar forms in all of the major cities[.]" June 5 PM Trial Tr. 38. Dr. Berkowitz did not cite actual examples of other metropolitan transit agencies that adhere to the policies and practices he characterized as standards. Rather, he asserted that because national research on transportation safety issues "filters down" to the major transit agencies, WMATA's policies reflect a national standard of care. See id. at 36-37.

*Robinson* at 69-70. The *Robinson* Court held that Dr. Berkowitz's "vague references" to other organizations was not enough:

> "Other than his own personal opinion," and vague references to these organizations' reports and "consensuses" that have developed, Dr. Berkowitz "was unable to suggest any recognized [national] standard" to support his opinion. *Varner v. Dist. of Columbia*, 891 A.2d at 268. Even when viewed in the light most favorable to plaintiff, the Court must conclude that Dr. Berkowitz's testimony "failed to establish any standard of care, and therefore failed to show how [WMATA] deviated from the standard of care." *Dist. of Columbia v. Moreno*, 647 A.2d 396, 399 (D.C. 1994).

*Robinson*, at 71.

Plaintiff's opposition does not identify a duty breached to plaintiff to establish negligence on behalf of WMATA. Wherefore, WMATA requests that the Court grant its motion for summary judgment.

### B. Opposition to Plaintiff's Crossmotion for Summary Judgment

Plaintiff's cross-motion for summary judgment is puzzling, as the body of law used by WMATA in seeking summary judgment is based on assumption of the risk, not contributory negligence. Notwithstanding, Plaintiff desires the remedy of dismissal of WMATA's articulated affirmative defense of "contributory negligence" on procedural grounds, despite a lack of prejudice and the courts preference for "decisions on the merits whenever possible". *See, e.g., Murphy v.*

8

*A.A. Beiro Const. Co.,* 679 A.2d 1039 (D.C. 1996). WMATA listed contributory negligence as an affirmative defense in its answer to plaintiff's complaint and provided a valid objection to Plaintiff's contention interrogatory. The case law plaintiff cites to support his position on the dismissal of the affirmative defense provides that the purpose of contention interrogatories is to "prevent litigants from hiding the ball". Nothing of the sort was done here. The entirety of WMATA's argument was constructed from plaintiff's deposition testimony, where counsel was present. Plaintiff's counsel, as stated in open court, is also familiar with DC common carrier law. Nothing was raised in summary judgment that was not already known to Plaintiff's counsel and had been known for the entirety of this litigation.

Plaintiff's further argument that her failure to hold on to a pole while riding a train does not amount to contributory negligence is incorrect. Plaintiff had a duty to exercise ordinary and reasonable care for her own protection:

> Applying the equally appropriate standard of *Futler v. McCalip*, D.C.Mun.App., 54 A.2d 644, 646 (1947), 'passengers are required to exercise ordinary and reasonable care, as determined by the circumstances, for their own protection.' (Footnote omitted.) Appellant admitted on cross-examination that she did not 'anticipate any jerks, jolts, sudden stops, which are incident to normal mass transportation.' It is fair to say that she knew or should have known that it would be dangerous to change seats under all the circumstances as she described them.

*Fells*, 357 A.2d. at 396.

**C. Conclusion**

For the above stated reasons, WMATA moves this Honorable Court to grant its motion for summary judgment and to deny Plaintiff's cross-motion for summary judgment.

Respectfully submitted,

WASHINGTON METROPOLITAN
AREA TRANSIT AUTHORITY

*/s/ Brendan H. Chandonnet*
Brendan H. Chandonnet, #986719
Senior Counsel
WMATA
300 Seventh Street SW
Washington, D.C. 20024
(202) 962-2805
(202) 962-2550 (fax)
bchandonnet@wmata.com
Attorney for Defendant WMATA

**CERTIFICATE OF SERVICE**

  I HEREBY CERTIFY that on this 27th day of October 2023, a copy of the foregoing was electronically filed and served on:

Patrick M. Regan, Esquire
pregan@reganfirm.com
Christopher J. Regan, Esquire
cregan@reganfirm.com
Regan Zambri Long PLLC
1919 M Street NW, Suite 350
Washington, DC 20036

            /s/ Brendan H. Chandonnet
            Brendan H. Chandonnet #986719