**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **CAROL W. SCOTT,** <br> **Plaintiff,** <br><br> **v.** <br><br> **WASHINGTON METROPOLITAN** <br> **AREA TRANSIT AUTHORITY,** <br> **Defendant.** | **Case No.: 1:22-cv-00601 CRC** |

<u>**DEFENDANT WASHINGTON METROPOLITAN AREA TRANSIT AUTHORITY'S**</u>
<u>**MOTION *IN LIMINE* AS TO PLAINTIFF'S EXPERT, DR. CARL BERKOWITZ**</u>

Defendant Washington Metropolitan Area Transit Authority ("WMATA"), by and through undersigned counsel, Wilson, Elser, Moskowitz, Edelman & Dicker, LLP, moves, *in limine*, pursuant to Fed. R. of Evid. 702, to exclude Dr. Carl. M. Berkowitz's testimony.  Dr. Berkowitz must be precluded from testifying as he has not offered any admissible opinion as to the national standard of care for the railcar operation of a regional metropolitan transit system such as WMATA; he is unqualified to testify regarding biomechanical engineering; and WMATA enjoys sovereign immunity with respect to its discretionary decisions in railcar design and the training and retention of employees. In support of this motion, Defendant WMATA submits and incorporates herein its Memorandum of Points and Authorities.

**WHEREFORE**, Defendant Washington Metropolitan Area Transit Authority respectfully requests that the Court grant this Motion and enter an order excluding Dr. Carl Berkowitz from testifying at trial.

307543121v.1

Date: January 31, 2025

Respectfully submitted,

**WILSON, ELSER, MOSKOWITZ, EDLEMAN & DICKER, LLP**

*/s/ Jason R. Waters* _____
Jason R. Waters, Esq. (D.C. Bar No.: 491066)
8444 Westpark Drive - Suite 510
McLean, VA 22102-5102
Telephone: (703) 245-9300
Facsimile: (703) 245-9301
Jason.Waters@wilsonelser.com

Patricia H. Beall, Esq. (D.C. Bar No.: 992515)
1500 K Street, NW, Suite 330
Washington, D.C. 20005
Telephone: (202) 626-7660
Facsimile: (202) 628-3606
Patricia.Beall@wilsonelser.com
*Counsel for Defendant Washington Metropolitan Area Transit Authority*

**WASHINGTON METROPOLITAN AREA TRANSIT AUTHORITY**

*/s/ Laurie Hand* _____
Laurie Hand, Esq. (DC Bar No.: 435095)
Washington Metropolitan Area Transit Authority
Legal Department 7E
P.O. Box 23768
Washington, D.C. 20026
Tel.: (202) 962-5063
Fax: (202) 962-2550
LAHand@wmata.com
*Counsel for Defendant Washington Metropolitan Area Transit Authority*

307543121v.1

**CERTIFICATE OF COMPLIANCE WITH LOCAL RULE 7(m)**

I HEREBY CERTIFY, pursuant to Local Rule 7(m), Defendant's counsel conferred with

Plaintiff's counsel, who does not consent to the relief requested in this motion.

/s/ Jason R. Waters
Jason R. Waters

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on this 31st day of January, 2025 I electronically filed the

foregoing with the Clerk of Court using the CM/ECF system.

/s/ Jason R. Waters
Jason R. Waters

3

307543121v.1

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **CAROL W. SCOTT,**<br>          **Plaintiff,**<br><br>**v.**<br><br>**WASHINGTON METROPOLITAN<br>AREA TRANSIT AUTHORITY,**<br>          **Defendant.** | **Case No.: 1:22-cv-00601 CRC** |

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT
WASHINGTON METROPOLITAN AREA TRANSIT AUTHORITY'S MOTION *IN
LIMINE* AS TO PLAINTIFF'S EXPERT, DR. CARL BERKOWITZ**

Defendant Washington Metropolitan Area Transit Authority ("WMATA"), by and through undersigned counsel, Wilson, Elser, Moskowitz, Edelman & Dicker, LLP, submits this motion in limine, pursuant to Federal Rule of Evidence 702, to exclude Dr. Carl. M. Berkowitz from testifying at trial.

### I.      Factual Background

Plaintiff Carol Wild Scott claims that she sustained an injury on September 23, 2019, while aboard a WMATA Orange Line Train at the McPherson Square Station. Ms. Scott boarded a WMATA Orange Line train in Vienna, Virginia, and she was traveling to McPherson Square Station. Ex. A, Scott Dep. at 17:11-13. At several stops during the trip, Ms. Scott recalled that the train would stop as it approached the station and then move forward to its final berth at the platform. *Id.* at 17:13-17; 28:15-21. Ms. Scott was traveling alone and carrying a purse and cane. *Id.* at 25:1-26. After the train arrived at McPherson Square, Ms. Scott recalls an announcement that the doors were opening on the left. *Id.* at 17:13-14. When she stood up from her seat at McPherson Square Station, Ms. Scott did not hold on to any handholds on the train. *Id.* at 30:10-

1

31:4. She did not use her cane to support herself. *Id.* at 34:6-18. Ms. Scott only used the cane "half and half" to maintain her balance while standing up. *Id.* at 35:16-19. After Ms. Scott stood up, she testified that the train moved forward, as it had at previous stations during her trip. *Id.* at 18:7-8. Ms. Scott claims that the operator did not announce that the train would re-position, and when the train moved, Ms. Scott fell to the ground and sustained injuries. *Id.* at 35:20-22.

At trial of this matter, Ms. Scott intends to call Dr. Carl Berkowitz to testify as an expert witness about to the national standard of care for rail transit operators, such as WMATA. Dr. Berkowitz frequently appears for plaintiffs in cases against metropolitan transit systems to testify about their standard of care. Courts routinely exclude, limit, or criticize Dr. Berkowitz's opinions because, as here, he routinely cites wholly inapplicable legal authority for his view that the transit system's standard of care is to serve as the absolute guarantor of passenger safety. Dr. Berkowitz relies extensively on his own "say so" to support his opinions, instead of valid and verifiable scientific methods. For these and other reasons, Dr. Berkowitz has a long record of adverse rulings on motions pursuant to Rule 702 and *Daubert*. This Court should also reject Dr. Berkowitz's conclusions and exclude him from testifying as an expert.

## II.    Legal Standard

Federal Rule of Evidence 702 governs the admissibility of expert testimony. Under the Rule, a

> witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify . . . if: (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702.

In *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993), the Supreme Court identified various factors that can inform the reliability analysis under Rule 702. Those factors include whether the expert's "theory or technique" (i) "can be (and has been) tested," (ii) "has been subjected to peer review and publication," (iii) has a high "known or potential rate of error," and (iv) enjoys "'general acceptance' within a relevant scientific community." *Id.* at 593-94 (internal citation omitted). But the *Daubert* factors "do not constitute a definitive checklist or test" applicable in every case. *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 150 (1999). Rather, under *Daubert*, courts have a "gatekeeping responsibility" of "ensuring that an expert's testimony both rests on a reliable foundation and is relevant to the task at hand." 509 U.S. at 597.

In *Kumho Tire*, the Supreme Court stressed that "nothing in either *Daubert* or the Federal Rules of Evidence requires a district court to admit opinion evidence that is connected to existing data only by the ipse dixit of the expert." *Kumho*, 526 U.S. at 256 (quoting *Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997)). Pursuant to Federal Rule of Civil Procedure 26(a)(2)(B), expert witnesses must provide a written report containing "a complete statement of all opinions the witness will express *and the basis and reasons for them*" (emphasis added). The purpose of that requirement is to "prevent unfair surprise at trial and to permit the opposing party to prepare rebuttal reports, to depose the expert in advance of trial, and to prepare for depositions and cross-examinations at trial." *Minebea Co. v. Papst*, 231 F.R.D. 3, 5-6 (D. D.C. 2005).

## III.     Argument

Dr. Berkowitz should be precluded from testifying because he has not offered any admissible opinion as to the national standard of care for the railcar operation of a regional metropolitan transit system, such as WMATA. Further, Dr. Berkowitz's testimony regarding jerk rates demonstrates the unfounded nature of his expert opinions, as his opinion ignores

3

established law in the District of Columbia and exceeds his qualifications. Moreover, Dr. Berkowitz's jerk rate opinions are irrelevant because WMATA enjoys sovereign immunity with respect to its discretionary decisions in railcar design and the training and retention of employees. Finally, Dr. Berkowitz has a demonstrated history of improperly relying on standards that are inapplicable to the circumstances at issue.

Dr. Berkowitz's reports in this case did not provide a sufficient basis for his findings and opinions. His reports included "facts" that are not from this incident, misstate statutes and regulations, and overarchingly failed to provide specific citations or references to the information on which he bases his opinions. Despite being instructed to bring "all documents he reviewed, referred to or relied upon in arriving at any opinions or conclusions concerning the issues involved in the lawsuit, including, but not limited to all scientific and technical articles, publications, codes, standards and other literature" to the deposition, Dr. Berkowitz did not produce these documents and was unable to clarify the basis of his expert testimony during his deposition beyond his own say-so. Deposition Notice Duces Tecum for Dr. Carl Berkowitz, Ex. B at 2 ¶ 4(c). For these reasons and those discussed below, Dr. Berkowitz's testimony would not properly assist the trier of fact in this matter because his testimony is inherently unreliable, unscientific, and inadmissible.

a. <u>Dr. Berkowitz's opinions are inadmissible with respect to the existence of a national standard of care.</u>

When a plaintiff submits an expert report, that report must "clearly articulate and reference a standard of care by which the defendant's actions can be measured." *Varner v. District of Columbia*, 891 A.2d 260, 265 (D.C. 2006) (internal quotations omitted). To establish a standard of care through expert testimony, the plaintiff's expert is required to "identify a 'concrete [national] standard upon which a finding of negligence could be based.'" *Robinson v.*

4

*WMATA*, 858 F. Supp. 2d 33, 39 (quoting *District of Columbia v. Carmichael*, 577 A.2d 312, 315 (D.C. 1990) (noting expert must proffer "a specific, articulable (and articulated) standard of care")). The expert must "clearly relate the standard of care to the practices in fact followed by other comparable governmental facilities or to some standard nationally recognized by such units." *Id.* (quoting *Clark*, 708 A.2d 632, 635 (D.C. 1997)). "Neither personal opinions nor unsupported generalizations provide a permissible basis for the expert's articulation of the applicable standard of care." *Liser v. Smith*, 254 F. Supp. 2d 89, 103 (D. D.C. 2003).

This Court previously found that Dr. Berkowitz's initial Rule 26 report did not establish a national standard of care in ruling on the parties' motions for summary judgment. ECF 34 at 16. Despite the opportunity to submit a supplemental report, to which WMATA maintains its objection, Dr. Berkowitz failed to establish a concrete national standard of care. His report, affidavit, supplemental report, and deposition testimony demonstrate that his opinions are grounded in factually incorrect information, unsupported generalizations, and personal opinions on what is "common sense." *See* Berkowitz Dep., Ex. C at 95:4, 95:16, 103:13-18, 109:22-110:5, 113:11-16, 143:6-9 (testifying the basis for his opinion is "common sense").

   i.    *Other Transit Systems*

When "the defendant is alleged to have failed to protect the plaintiff from harm, the expert must clearly articulate and reference the standard of care by which the defendant's actions can be measured" and "must show that the standard is accepted in the industry." *Beckwith v. Interstate Mgmt. Co., LLC*, 82 F. Supp. 3d 255, 262 (D. D.C. 2015) (citing *Varner*, 891 A.2d at 269); *Novak v. Capital Mgmt. & Dev. Corp.*, 570 F.3d 305, 313 (D.C. Cir. 2009) (citing *Pannell v. District of Columbia*, 829 A.2d 474, 479-480 (D.C. 2003), and *Clark v. District of Columbia*, 708 A.2d 632, 635 (D.C. 1997)). In the latter regard, the expert must support a purported

standard of care by showing that it has been accepted as controlling for operation of facilities and enterprises similar to the defendant's facilities and enterprises. *See Novak*, 570 F.3d at 313. Further, a standard of care must be national in scope and may not rest solely upon local custom. *See e.g. Capitol Hill Hospital v. Jones*, 532 A.2d 89, 93-94 (D.C. 1987) (refusing defendant's request for jury instruction that the proper standard of care is that followed in the local D.C. area); *Travers v. District of Columbia*, 672 A.2d 566, 569 (D.C. 1996) (rejecting testimony as to practices of local practitioners for avoiding blood clots after surgery, even those required to meet national standard, as basis for enunciation of national standard of care).

In his initial report, Dr. Berkowitz failed to cite to other transit systems or their specific policies as part of his requirement to set forth a national standard of care with respect to reberthing a train. Ms. Scott then obtained a supplemental affidavit from Dr. Berkowitz and attached it to her reply brief in support in support of summary judgment. Ex. D. In this affidavit, Dr. Berkowitz stated without support that transit authorities in New York, Philadelphia, and Chicago adhere to the same standard of care that WMATA follows with respect to reberthing a train. Ex. D at 5. This Court found in its July 1, 2024, Memorandum Opinion and Order that his affidavit only highlighted that the initial report did not provide a concrete national standard of care from which to measure WMATA's actions. ECF 34 at 17-18. Over WMATA's objection, ECF 40, the Court granted Ms. Scott the opportunity to re-open discovery and submit a supplemental report by Dr. Berkowitz. ECF 41.

Despite receiving a second opportunity to establish a national standard of care, Dr. Berkowitz's supplemental report still failed to meet this threshold requirement because he identified only three other transit systems and, even for those, was unable to provide any support for his view about their standard of care. Instead, he simply repeated that these transit systems

6

follow his putative standard of these other transit systems' "because I said so." Specifically, in

his Supplemental Report, Dr. Berkowitz asserts that the New York City Metropolitan

Transportation Authority, Chicago Transit Authority, and Massachusetts Bay Transit Authority

adhere to the same standards as WMATA for reberthing. *See* Dr. Berkowitz's Supp. Report, Ex.

D at 8-10. However, Dr. Berkowitz failed to cite to a single specific policy document from any

of those transit systems in support of this assertion. He did not provide any excerpts or specific

references to the operating procedures of any of named transit systems, or any transit system. *Id*.

During his deposition, Dr. Berkowitz testified, with respect to the New York City Transit,

Massachusetts Bay Transit Authority and Chicago Transit Authority, that he did not consult any

specific documents to prepare his supplemental report. Ex. C at 147:3-11. Instead, he merely

proffered that "there are documents, but I didn't refer to them because I was very familiar with

their procedures," Ex. C at 139:17-140:2, or that he "remember[s] reading, you know, in the past

various operating procedures and training manuals which also covered these areas which I

couldn't get my hands on, couldn't find, but I do remember." Ex. C at 148:2-6.

At various times, Dr. Berkowitz stated his knowledge was based on "talking to people in

the industry," Ex. C at 145:16-17. When asked to identify whom he spoke to, Dr. Berkowitz was

unable to provide any specific person.

Q: Who was it you contacted at SEPTA?

**A: No, I didn't. I belong to committees, and I just asked people, you know, how do you handle this? In fact, which I didn't include in my report, I did a summary of all the people I spoke to on various committees as to how they deal with this situation. I prepared something general, but I didn't include it in my report.**

Ex. C at 135:1-8. As of filing this motion, Dr. Berkowitz and Ms. Scott still have not provided

this general summary of Dr. Berkowitz's "conversations with people in the industry" to

WMATA. In fact, the only person Dr. Berkowitz could name was a retired New York City

Transit train operator, who had no responsibility for setting policy for the transit system, with whom Dr. Berkowitz had "general conversations" sometime "between 2000 and 2024." Ex. C at 148:12-150:17.

At other times Dr. Berkowitz claimed his knowledge of the national standard of care was just common sense. Ex. C at 143:3-9 ("My knowledge of each systems is independent of each other. It's a national standard of care. This is common sense. These are common sense things that are required to do."). These explanations for Dr. Berkowitz's knowledge of a national standard of care are wholly insufficient and in direct contravention with Federal Rule of Civil Procedure 26(a)(2)(B) requiring expert witnesses to provide "a complete statement of all opinions the witness will express and the basis and reasons for them." Dr. Berkowitz unabashedly relies solely on his on "say so," but this is the classic ipse dixit that courts routinely reject in challenges under Rule 702 and *Daubert*.

Significantly, similar testimony from Dr. Berkowitz has been stricken after the court found his "vague references" to other organizations to be insufficient:

> "Other than his own personal opinion," and <u>vague references to these organizations' reports</u> and "consensuses" that have developed, Dr. Berkowitz "was unable to suggest any recognized [national] standard" to support his opinion. *Varner v. District of Columbia*, 891 A.2d at 268. Even when viewed in the light most favorable to plaintiff, the Court must conclude that Dr. Berkowitz's testimony "failed to establish any standard of care, and therefore failed to show how [WMATA] deviated from the standard of care." *Dist. of Columbia v. Moreno*, 647 A.2d 396, 399 (D.C. 1994).

*Robinson v. WMATA*, 941 F. Supp. 2d 61, 71 (D.D.C. 2013) (emphasis added.).

It is abundantly clear from Dr. Berkowitz's admission that he did not review the applicable policies from other transit systems in the United States and that he is unable to establish an accepted national standard of care within the industry beyond his evidentiarily unacceptable "because I said so."

8

ii.    *Common Carrier Law*

Not only does Dr. Berkowitz rely extensively on his own "say so," but when he does try to cite authority for a standard, his citations are alarmingly inapplicable. For example, Dr. Berkowitz claims that Title 47 U.S.C. Part I imposes liability on WMATA as a "common carrier." Based on his interpretation of Title 47, he claims that WMATA is "held to a higher standard of care for their passengers than a typical driver," Ex. F at 16, and as a common carrier, WMATA violated its duty to ensure passengers are safe and do not become injured, Ex. B at 15. During his deposition, Dr. Berkowitz testified that he read Title 47 U.S.C. Part I and that it defined the term "common carrier" as "somebody moves goods. People in goods. Same thing." Ex. C at 104:4-105:13.

Title 47 relates to "common carriers" in the telecommunications field – it has absolutely nothing to do to with mass transit. Section 153 defines common carriers as:

> any person engaged as a common carrier for hire, in interstate or foreign communication by wire or radio or interstate or foreign radio transmission of energy, except where reference is made to common carriers not subject to this chapter; but a person engaged in radio broadcasting shall not, insofar as such person is so engaged, be deemed a common carrier.

Title 47 U.S.C. §153(11). Title 47 has no conceivable application to WMATA.

Yet, confronted with this misrepresentation, Dr. Berkowitz doubled down. Claiming this was simply a "typo," he resorted to his familiar ipse dixit to claim that the statute may not apply, but the principle remains good authority. Respectfully, this was not a "typo." Dr. Berkowitz offered the statute to suggest that federal authority supported his view of a common carrier's obligations and standards of care, and he even provided a hyperlink citation to the statute to support his opinion. *See* Ex. F at 16, n.17. Dr. Berkowitz's use of a telecommunications standard for "common carrier" and his attempt to apply that standard to a transit system demonstrates a

9

fundamental lack of valid scientific methodology and the absence of diligence that the law demands of an expert.

### iii.    The United States Occupational Safety and Health Act (OSH Act)

Similarly, Dr. Berkowitz argues that the OSH Act applied to Ms. Scott, as a passenger on a train, because the train was WMATA's workplace. Acknowledging that Ms. Scott was not a WMATA employee or at her own workplace, Dr. Berkowitz claimed that "according to the General Duty Clause of OSHA the employer, WMATA, has the responsibility to identify and correct any hazards that may harm employees or others" and that WMATA failed to comply with this requirement. Ex. F at 17. However, during his deposition, Dr. Berkowitz admitted that the OSH Act is specific to an employer and employee. Ex. C at 116:21-117:3; *see also* 29 U.S.C. §654 (a)(1). Dr. Berkowitz acknowledged that OSHA's regulations, 29 C.F.R. 1910.5(d), are also limited to the employer and employee. Ex C at 118:21-119:13; *see also* 29 C.F.R. 1910.5(d) ("In the event a standard protects on its face a class of persons larger than employees, the standard shall be applicable under this part only to employees and their employment and places of employment.").

Again, confronted with legal authority that conflicts with his "say so," Dr. Berkowitz claimed that the OSH Act implements an unwritten national standard of care that is so broad that it extends protection to any person visiting any public place, as long as the public place is arguably someone else's workplace. Ex. C at 119:14-121:7. Notably, Dr. Berkowitz could not cite a single instance in which OSHA cited a rail transit system for a passenger injury. Ex. C. 121:8-12. Dr. Berkowitz's say-so does not establish a national standard of care. Nor may he unilaterally extend the powers vested in OSHA by Congress. As with Dr. Berkowitz's reliance on "common carriers" in telecommunications, Dr. Berkowitz's reliance on OSHA is wholly

10

inapplicable in these circumstances.

In 2017, the District Court for the Eastern District of New York struck Dr. Berkowitz's attempt to make a similar argument that the defendant violated the OSH Act's General Duty Clause when a passenger was injured while crossing from the jet bridge to the aircraft:

> [T]he OSHA standard merely requires an employer to "furnish to each of his employees employment and a place of employment which are free from recognized hazards." This general and abstract requirement would not help a factfinder determine the narrow question of whether the height differential between the jet bridge and the aircraft floor was a dangerous condition. It does not support Dr. Berkowitz's opinion. It simply poses the question.

*Rodriguez v. British Airways,* 17-CV-03691, 2017 U.S. Dist. LEXIS 204217, at*8 (E.D.N.Y. Dec. 12, 2017). As in *Rodriguez,* by relying on the General Duty Clause of the OSH Act, Dr. Berkowitz "needlessly complicates the dispute between the parties and improperly relies on standards that are inapplicable to the circumstances at issue." *Id.*

### iv.     WMATA Standard Operating Procedures

Dr. Berkowitz asserted in his report that WMATA's Standard Operating Procedures ("SOPs") 40, relating to procedures for train operators to follow while servicing a station, and 50, relating to guidance on announcements, are in and of themselves national standards of care. Ex. F at 17-18. Dr. Berkowitz further testified that WMATA violated this standard of care when it failed to sufficiently train its operator's on reberthing trains and announcements. Ex. C at 129:22-131:9. As this Court previously found in its July 1, 2024, Memorandum Opinion and Order, however, "violations of procedures prescribed by internal manuals are insufficient in themselves, as 'a defendant cannot be held liable for aspiring to efforts beyond an applicable national standard.'" ECF 34 at 16 (citing *Varner*, 891 A.2d at 269-70).

Beyond WMATA's SOPs being insufficient to establish a national standard of care, Dr. Berkowitz's opinion regarding the training of employees is not relevant to any claim at issue. It

11

is well established that WMATA enjoys sovereign immunity from claims of negligent hiring, training, and supervision involving alleged tortious conduct. *Beebe v. WMATA*, 129 F.3d 1283, 1287 (D.C. Cir. 1997); *Burkhart v. WMATA*, 112 F.3d 1207, 1216 (D.C. Cir. 1997). Therefore, Dr. Berkowitz's testimony regarding WMATA's SOPs creating a standard of care, and his related opinions, should be excluded.

<em>v.   Hazard Management</em>

In his report, Dr. Berkowitz asserted that Military Standard 882E has been "adopted" by the U.S. Department of Transportation ("U.S. DOT") and required WMATA to follow a certain protocol for conducting a hazard analysis. Ex. F at 20-21. At the outset, the selection of a proper hazard management process standard is a discretionary activity for which WMATA enjoys sovereign immunity. *See Burkhart v. WMATA*, 112 F.3d 1207, 1216 (D.C. Cir. 1997). As such, Dr. Berkowitz's related opinions are irrelevant.

Further, during his deposition, Dr. Berkowitz cited "seminars and the brochures" offered by the U.S. DOT as the basis for his believe that U.S. DOT "adopted" Military Standard 882E. Ex. C at 124:15-7. When asked to identify a specific document as a source, Dr. Berkowitz stated he could not. Ex. F at 124:20-22. Ultimately, Dr. Berkowitz admitted that Military Standard 882E is not a statutory requirement or "adopted" by U.S. DOT as an obligatory hazard analysis protocol. Ex. C at 126:1-16. Once again, Dr. Berkowitz relies on wholly inapplicable statutes or miscited authority to support his "say so" as to what the applicable standard of care may be. More worrisome, Dr. Berkowitz's failure to verify whether the standard was adopted by U.S. DOT provides another example of Dr. Berkowitz's failure to rely on valid scientific, technical, or specialized knowledge.

12

        **b.** <u>Dr. Berkowitz's testimony regarding jerk rates demonstrates the unfounded nature of his expert opinions.</u>

            *i.  Dr. Berkowitz ignores that WMATA is not the guarantor of passenger safety as a matter of law.*

It is well established in the District of Columbia that the mere happening of an accident does not impose liability or reveal proof of negligence. *See District of Columbia v. Davis*, 386 A.2d 1195, 1200 (D.C. 1978). As a common carrier, WMATA owes its passengers a reasonable duty of care, "commensurate with the particular hazards involved." *See D.C. Transit System, Inc., v. Carney*, 254 A.2d 402, 403 (D.C. 1969). This requires "all the care and caution which a bus driver of reasonable skill, foresight, and prudence could be fairly expected to exercise. . ." as ". . . depends upon the dangerousness of the activity." *Id.* Additionally, passengers are deemed,

> [T]o assume such risks as an incident of their travel and for that reason recovery is usually denied unless it is shown that the 'jerk; or 'sudden start' was of such unusual and extraordinary force that it could not reasonably be said to have happened in the ordinary operation of the vehicle.

*D.C. Transit System, Inc. v. Perry*, 337 A.2d 224, 225 (D.C. 1975) (quoting *Wiggins v. Capital Transit Co.*, 122 A.2d 117, 118 (D.C. 1956)).

This means that there are accidents or injuries on the WMATA system for which the Authority is not liable. Dr. Berkowitz rejects this longstanding legal authority in the District of Columbia. He provides the opinion that WMATA's standard of care requires the Authority to serve as the guarantor of passenger safety at all times such that WMATA faces liability anytime a passenger falls and sustains an injury:

    Q.    Is it your testimony and your opinion, sir, that any time a transit authority in any mode of operation, right, either bus or train, exceeds the jerk rate, that they would've violated the national standard of care?

    **A.**    **That's correct.**

    Q.    All right. So there's no movement of a vehicle or a rail transit system –

13

A.      **Let me finish. I'm not finished yet. Except for an emergency braking.**

Q.      Okay. Except in an emergency braking, there's no movement on a rail transit system or a bus system that exceeds the jerk rate that is also within the standard of care?

A.      **The national standard of care is that vehicles should accelerate in a smooth manner so that they don't exceed the jerk rate so that person standing or sitting doesn't lose stability like fall forward. There's been cases where people had fallen out of their seats, and in many cases and many studies that have been done, most of them have been done in Israel. That if the jerk rate is exceed both laterally and based upon super elevation or lack of super elevation, going around a curve, if that jerk rate is exceed, then it causes an instability on the part of the person and in many cases it results in injury to that person.**

Q.      And at any time a person sustains an injury on a transit system due to a sudden, unexpected change in acceleration or deceleration, it is your opinion that the transit authority is responsible, legally responsible to that person for violating the standard of care?

A.      **Of course.**

Ex. C at 99:12-101:11.

Despite admitting he is not a lawyer, Ex. C at 42:6-7, Dr. Berkowitz takes no issue with providing incorrect opinions of law under the guise that they are accepted national standards of care. His testimony is dangerously prejudicial and entirely unfounded. Therefore, Dr. Berkowitz's testimony should be excluded.

ii.  *Dr. Berkowitz is not qualified to provide opinions on acceptable jerk rates.*

The trial judge must determine as an initial matter whether the proffered witness is qualified to give the expert opinion he seeks to express. *See Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 156, (1999); *Daubert*, 509 U.S. at 589. To do so, the court must assess whether the proffered expert has "sufficient specialized knowledge to assist the jurors in deciding the particular issues in this case." *Kumho*, 526 U.S. at 156 (internal quotation marks omitted).

14

Although Dr. Berkowitz is designated as a "transportation and traffic engineer," his report offers opinions related to jerk rates and human factors while walking and falling. Ex. F at 4-14. It is clear from Mr. Berkowitz's designation and curriculum vitae that he is not qualified to offer an opinion on the biomechanics of falls due to a train stopping. Beyond one anatomy continuing education course, about which Dr. Berkowitz could provide few if any details, Dr. Berkowitz has no specific education in biomechanics. Ex. C at 44:21-53:13. In addition to his lack of expertise in this area (he is a transportation engineer, not a biomechanical engineer), Mr. Berkowitz has no reliable opinion regarding the jerk rate of WMATA trains. He has not inspected the train at issue or any of WMATA's trains and did not conduct an analysis of the jerk rate produced in this incident. While he provides a timeline of events to use in his analysis, Dr. Berkowitz testified during his deposition that the timeline was not based on information from this case but rather on his general knowledge of how long it takes people to fall. Ex. C at 65:1-68:10.

An expert witness must have scientific, technical, or other specialized knowledge that will help the trier of fact to understand the evidence or to determine a fact in issue. *Motorola Inc. v. Murray*, 147 A.3d 751, 756 (D.C. 2016) (adopting Fed. R. Evid. 702). Due to his lack of expertise regarding the biomechanics of walking, falling, and jerk rates, his opinions on the same are not beyond the ken of the average layperson, nor do they aid the jury in understanding the evidence and they must be stricken. *Id.*

     c.  <u>WMATA enjoys sovereign immunity from certain key aspects of Dr. Berkowitz's testimony and opinions.</u>

WMATA, which was created through the Washington Metropolitan Area Transit Authority Compact signed by Maryland, Virginia, and the District of Columbia, *see* Pub. L. No. 89-774, 80 Stat. 1324 (1966) (codified as amended at D.C. Code § 9-1107.01 et seq.), is entitled

to share in the sovereign immunity of the Compact's signatories. *Beebe v. WMATA*, 129 F.3d 1283, 1287 (D.C. Cir. 1997). In determining whether an activity enjoys protection, courts apply a two-part test. *WMATA v. Barksdale-Showell*, 965 A.2d 16, 20 (D.C. 2009). First, if an activity is "quintessentially governmental" it is shielded from suit by WMATA's sovereign immunity. *Id.* Second, if the activity is discretionary in nature, rather than ministerial, it also enjoys sovereign immunity. *Burkhart v. WMATA*, 112 F.3d 1207, 1216 (D.C. Cir. 1997).

Throughout his report and deposition testimony, Dr. Berkowitz faults WMATA with respect to the design of the train as well as training and supervision issues. For example, Dr. Berkowitz testified that the issue with the train exceeding an acceptable jerk rate is either a mechanical design issue of the train regarding how fast the train can accelerate or a training issue for instructing the operator in terms of how fast the train decelerates. Ex. C at 85:19-86:11; 90:2-91:16. His opinions on these issues, and others related to design and training, must be stricken, however, because these are discretionary activities. *Beebe v. WMATA*, 129 F.3d 1283, 1287 (D.C. Cir. 1997); *Burkhart v. WMATA*, 112 F.3d 1207, 1216 (D.C. Cir. 1997).

      d. <u>Dr. Berkowitz's did not provide a list of prior testimony, which would reveal a history of his expert testimony being limited or stricken.</u>

Under Federal Rule of Civil Procedure 26(a)(2)(B)(v), Dr. Berkowitz was required to provide WMATA with a list of all other cases in which, during the previous four years, Dr. Berkowitz testified at trial or by deposition. Dr. Berkowitz's report and supplemental report did not contain this list. If the list of prior testimony had been disclosed, it would have revealed a history of Dr. Berkowitz's testimony being stricken, limited, and criticized for reasons similar to the issues in this case.

For example, in 2022, the Queens County Supreme Court struck Dr. Berkowitz's testimony after finding that "Dr. Berkowitz's findings are not "fairly inferable" from the evidence

16

he relied upon in lieu of inspecting the subject area where the accident occurred" and that his findings were both "speculative and conclusory." *Singh v. Long Island R.R.*, 705808/20, 2022 N.Y. Misc. LEXIS 13704, at *10 (N.Y. Sup. Ct. Aug. 25, 2022). The Suffolk County Supreme Court also excluded Dr. Berkowitz's testimony in 2022 after finding that Dr. Berkowitz failed to discuss the standard of care required. *See Mahnaz Sheikh v. Chugh*, 620874/17, 2022 N.Y. Misc. LEXIS 45816, at *13-16 (N.Y. Sup. Ct. Aug. 25, 2022).

Dr. Berkowitz's testimony was limited by the United States District Court for the District of New Jersey in 2022 and 2023. *See Jason, et al v. Nat'l R.R. Passenger Corp.*, *et al*, 17-7873, 2022 U.S. Dist. LEXIS 196546, at * 11-12 (D.N.J. Oct. 28, 2022) ("In sum, Berkowitz is precluded from addressing any of the national standards of care relied upon in his Report as they are unreliable, irrelevant, and/or could cause confusion"); *see also Tramontano v. N.J. Transit Rail Operations, Inc.*, 14-5706, 2023 U.S. Dist. LEXIS 77904, at *39 (D. N.J. May 4, 2023) ("The Court finds that Dr. Berkowitz's report and testimony regarding the following is inadmissible: NJTRO's failure to (i) provide the crew of Plaintiffs' train with tools and equipment for self-defense; (ii) abide by OSHA standards, the APTA Manual, and standards for New Jersey Transit; and (iii) comply with FELA and satisfy its duty of care for the safety of its employees and the safety of its passengers."). His testimony was again limited in 2023 by the Georgia Fulton County Court in *Love v. Metro. Atlanta Rta*, 2021CV358291, 2023 Ga. Super. LEXIS 1593, at *5-6 (Fulton County Jun. 23, 2023) ("Dr. Berkowitz's additional findings and opinions are not properly supported and would not assist the jury in this case.").

Since 2017, Dr. Berkowitz's testimony has been excluded, stricken, limited, or criticized in multiple cases for reasons similar to issues in this matter:

- *Robinson v. WMATA*, 941 F. Supp 2d 61, 71 (D.D.C. 2013),aff'd, 774 F.3d 33 (2014)) ("In sum, Dr. Berkowitz failed to link or relate the purported standards – checking the

17

internal center mirror before releasing the brakes, making an announcement before pulling away from the bus stop, and failing to start the bus gradually and stop smoothly – to national standards of care.").

- *Colon v. Metro-N. Commuter R.R.*, 2:13-cv-00325, 2017 U.S. Dist. LEXIS 88343, at *4-5 (D.Conn. Jun. 2, 2017) (precluding Dr. Berkowitz's testimony on evidence for which he does not have expertise, and precluding Dr. Berkowitz's testimony about applicable legal standards)

- *Houser v. Norfolk Southern,* 264 F. Supp. 3d 470, 477 (W.D.N.Y. 2017) ("Here, the Court finds that Dr. Berkowitz's unsworn expert report is speculative, based upon an unsupported and inaccurate interpretation of the record evidence, and posits blanket conclusory statements of causation and liability.")

- *Rodriguez v. British Airways*, 17-CV-03691, 2017 U.S. Dist. LEXIS 204217, at *7 (E.D.N.Y.  Dec. 12, 2017) ("Dr. Berkowitz's opinion needlessly complicates the dispute between the parties and improperly relies on standards that are inapplicable to the circumstances at issue here.")

- *Perdomo v. Wash. Metro. Area Transit Auth.*, 2019-CA-000187-V, 2019 D.C. Super. LEXIS 267, at *9-10 (D.C. Super. Ct. Nov. 9, 2019) ("Moreover, while Plaintiffs' expert opines that the bus driver failed to comply with a 'safe jerk rate,' the Court was not able to find any indication in the expert's report as to what the 'safe jerk rate' was and how the driver in this case is alleged to have exceeded it" and "[a]dditionally, to the extent that the expert seeks to rely on WMATA's standard operating procedures (SOP) to establish a standard of care that the driver was not to operate the bus until after Plaintiff has paid his fare, such a conclusion is contrary to the law of this jurisdiction which has determined that a common carrier has no duty to ensure that passengers are seated before moving.")

- *Hayes v. WMATA*, 2018-CA-0003530V, 2020 D.C. Super. LEXIS 161, at *9-10 (D.C. May 13, 2020) ("The Court grants Defendant's Motion and excludes the report and testimony of Mr. Berkowitz from this litigation upon finding, for much of Defendant's allegedly wrongful conduct contained in the Complaint, he has failed to articulate a national standard of care.")

WMATA respectfully requests this Court follow judges throughout the country in rejecting Dr. Berkowitz's unscientific and inherently unreliable testimony.

### IV.    Conclusion

Dr. Berkowitz has not provided a standard of care that is accepted in the industry. Rather, at best, the standard of care Dr. Berkowitz asserted can be characterized as his own generalized and aspirational opinion of what the standard of care *should* be. At worst, Dr. Berkowitz plainly

misstates the facts and law. His testimony would not properly assist the trier of fact in this matter as his testimony is both unreliable and highly prejudicial.

      **WHEREFORE**, for the reasons set forth above, Defendant Washington Metropolitan Area Transit Authority respectfully requests that the Court grant this Motion and prevent Dr. Berkowitz from testifying at trial.

Date: January 31, 2025

      Respectfully submitted,

      **WILSON, ELSER, MOSKOWITZ, EDELMAN & DICKER, LLP**

      */s/ Jason R. Waters*
      Jason R. Waters, Esq. (D.C. Bar No.: 491066)
      8444 Westpark Drive - Suite 510
      McLean, VA 22102-5102
      Telephone: (703) 245-9300
      Facsimile: (703) 245-9301
      Jason.Waters@wilsonelser.com

      Patricia H. Beall, Esq. (D.C. Bar No.: 992515)
      1500 K Street, NW, Suite 330
      Washington, D.C. 20005
      Telephone: (202) 626-7660
      Facsimile: (202) 628-3606
      Patricia.Beall@wilsonelser.com
      *Counsel for Defendant Washington*
      *Metropolitan Area Transit Authority*

      **WASHINGTON METROPOLITAN AREA TRANSIT AUTHORITY**

      */s/ Laurie Hand*
      Laurie Hand, Esq. (DC Bar No.: 435095)
      Washington Metropolitan Area Transit Authority
      Legal Department 7E
      P.O. Box 23768
      Washington, D.C. 20026
      Tel.: (202) 962-5063
      Fax: (202) 962-2550
      LAHand@wmata.com
      *Counsel for Defendant Washington*
      *Metropolitan Area Transit Authority*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 31st day of January, 2025 I electronically filed the

foregoing with the Clerk of Court using the CM/ECF system.


*/s/ Jason R. Waters*
Jason R. Waters

20