# Exhibit 10



# Transcript of Clev Bernard Ibanez Bennett, Designated Representative

**Date:** February 9, 2023
**Case:** Scott -v- Washington Metropolitan Area Transit Authority

**Planet Depos**
**Phone:** 888-433-3767
**Fax:** 888-503-3767
**Email:** transcripts@planetdepos.com
www.planetdepos.com

Transcript of Clev Bernard Ibanez Bennett, Designated Representative 1 (1 to 4)
February 9, 2023

## Page 1

```
             UNITED STATES DISTRICT CIRCUIT COURT
                 FOR THE DISTRICT OF COLUMBIA
------------------------X
CAROL WILD SCOTT,
        Plaintiff,
        vs.             Civil Action No.
WASHINGTON METROPOLITAN  22-cv-00601 (CRC)
AREA TRANSIT AUTHORITY,
        Defendant.
------------------------X

    30(b)(6) DEPOSITION OF CLEV BERNARD IBANEZ BENNETT
                    Conducted Remotely
                Thursday, February 9, 2023
                     2:58 p.m. Eastern


Job No.:  480571
Pages 1 - 54
Reported by:  Cynthia Powers
```

## Page 2

```
            A P P E A R A N C E S

ON BEHALF OF THE PLAINTIFF:
        Christopher J. Regan, Esquire
        Regan, Zambri & Long, PLLC
        1919 M Street, N.W., Suite 350
        Washington, D.C. 20036
        (202) 463-3030
        cregan@reganfirm.com

ON BEHALF OF THE DEFENDANT:
        Brendan H. Chandonnet, Esquire
        Nicholas L. Phucas, Esquire
        Washington Metropolitan Area Transit
        Authority
        Office of General Counsel
        300 7th Street, S.W.
        Washington, D.C. 20004
        (202) 962-1234
        bchandonnet@wmata.com
```

## Page 3

| | I N D E X | Page |
|---|---|---|
| | Examination by Mr. Regan | 5 |
| | **E X H I B I T S** | |
| | (Attached) | |
| Number | | Page |
| Exhibit 1 | Amended Notice of 30(b)(6) Deposition | 5 |
| Exhibit 2 | Incident/Accident Report, 9/23/19 | 5/8 |
| Exhibit 3 | Incident Report, 9/23/19 | 5/18 |
| Exhibit 4 | E-Mail, Graves to WMATA WMSC Notification, 9/23/19 | 5/24 |
| Exhibit 5 | Press Release, 3/4/19 | 5 |
| Exhibit 6 | Press Release, 6/19/19 | 5 |
| Exhibit 7 | E-Mail, 3/2/19, Bates No. WMATA000060 | 5/51 |
| Exhibit 8 | Rail Signal Safety Updates | 5 |
| Exhibit 9 | Station Overrun Report, 4/20/19 | 5 |

## Page 4

| | E X H I B I T S | |
|---|---|---|
| | (Continued) | |
| Number | | Page |
| Exhibit 10 | Station Overrun Report, 4/28/19 | 5 |
| Exhibit 11 | RTRA Training Request Form | 5 |
| Exhibit 12 | Investigation Report | 5/34 |
| Exhibit 13 | E-Mail, Bumbry to Alston and others, 2/26/19 | 5/46 |
| Exhibit 14 | Trains Certification Result | 5/49 |
| Exhibit 15 | Standard Operating Procedure Nos. 40.5 and 50.5 | 5 |
| Exhibit 16 | Washington Post Article, 6/26/18 | 5 |

**Page 5**

```
 1              P R O C E E D I N G S
 2         (Whereupon, WMATA Deposition Exhibits 1
 3   through 16 were premarked electronically for
 4   identification.)
 5         THE COURT REPORTER:  Will counsel please
 6   stipulate that in lieu of formally swearing in the
 7   witness in person, the reporter will instead ask
 8   the witness to acknowledge that their testimony
 9   will be true under the penalties of perjury and
10   that counsel will not object to the admissibility
11   of the transcript based on proceeding in this way.
12         MR. REGAN:  On behalf of the plaintiff,
13   yes.
14         MR. CHANDONNET:  I'm fine with that.
15         MR. PHUCAS:  That's fine.
16          CLEV BERNARD IBANEZ BENNETT
17
18      having been satisfactorily identified
19       and duly sworn by the Notary Public,
20      was examined and testified as follows:
21
22       EXAMINATION BY COUNSEL FOR PLAINTIFF
```

**Page 6**

```
 1   BY MR. REGAN:
 2      Q.  Good afternoon, Mr. Bennett.  We met
 3   just a couple seconds ago off the record.  Again,
 4   my name is Chris Regan and I represent the
 5   plaintiff, Carol Scott, in this case.
 6          Would you please state your full name
 7   for the record?
 8      A.  Clev Bernard Ibanez Bennett.
 9      Q.  And Mr. Bennett, let me show you what's
10   been marked Exhibit 1.  This is a notice of
11   deposition for today's deposition.  Do you see
12   that on your screen?
13      A.  Yes.
14      Q.  My understanding -- just scrolling down
15   to the second page.  My understanding is that
16   you're going to be talking with us today about
17   areas of testimony 1, 2, and 7.  Is that your
18   understanding as well?
19      A.  Yes.
20         MR. REGAN:  And Brendan, 6, sort of
21   subject to what we discussed in the last
22   deposition; right?  We're not, but we discussed it
```

**Page 7**

```
 1   last time?
 2         MR. CHANDONNET:  Yes.
 3   BY MR. REGAN:
 4      Q.  All right.  So Mr. Bennett, I know that
 5   Mr. Chandonnet is on a short timer today, so I'm
 6   going to try to move quickly.
 7      A.  Okay.
 8      Q.  Have you ever had your deposition taken
 9   before?
10      A.  Yes.
11      Q.  You probably know most of the rules and
12   I'm not going to waste time.  The most important
13   one is just that if I ever ask a question at some
14   point over the course of the next two hours that
15   you're not sure you understand or just doesn't
16   make sense, which I'm bound to do at some point,
17   let me know and I'm always going to be happy to
18   rephrase it.
19         The important thing is for us to both
20   make sure we're talking about the same thing and
21   understanding each other.  Okay?
22      A.  All right.
```

**Page 8**

```
 1      Q.  All right.  Let's take a look at
 2   Exhibit 2, please.  On your screen should be
 3   Exhibit 2, and with this and any exhibit that I
 4   put up there today, I'm happy to scroll up and
 5   down, show you all the pages, zoom in, zoom out,
 6   whatever you need to make sure you can read it
 7   and --
 8         MR. CHANDONNET:  Chris, if you just give
 9   him the Bates number, he has it in front of him.
10         MR. REGAN:  This is Bates WMATA 2
11   through 9.
12         MR. CHANDONNET:  Got it.  We're good.
13         MR. REGAN:  The only catch, Brendan, I
14   might be referring to stuff on the screen, but
15   I'll describe it as I go through anyway.
16         (Introduced Exhibit 2)
17   BY MR. REGAN:
18      Q.  Mr. Bennett, whatever is easier for you
19   is fine with me.
20      A.  Okay.
21      Q.  First of all, Mr. Bennett, what is this
22   document that we're looking at?
```

**Page 29**

1  MR. CHANDONNET: He doesn't know, Chris.
2  BY MR. REGAN:
3  Q. You don't know where Mr. Graves got this
4  statement of fact that he put forth to the WMSC?
5  A. No.
6  Q. You don't know whether WMATA ever
7  supplemented or corrected that information
8  provided to WMSC, do you?
9  A. No.
10  Q. Okay. Do you know whether it's
11  important to provide information the full
12  information of what happened to Ms. Scott to the
13  WMSC?
14  A. Yes.
15  Q. And is it?
16  A. Would you phrase that --
17  Q. The first question, I guess, was: Do
18  you know whether it's important to provide full
19  information to WMSC? You said, "Yes." And the
20  follow-up question is: It is important to provide
21  full information of what happened to WMSC; right?
22  A. Yes.

**Page 30**

1  Q. As we sit here today, is it WMATA's
2  position that Ms. Scott did anything wrong to lead
3  to her fall?
4  MR. CHANDONNET: Objection. I'm going
5  to direct him not to answer any questions that
6  deal with legal strategy.
7  MR. REGAN: Okay. We'll agree to
8  disagree. If you've instructed him not to answer
9  that question, that's fine.
10  MR. CHANDONNET: Thank you.
11  BY MR. REGAN:
12  Q. Mr. Bennett, are there any facts in any
13  of the documents that you reviewed, any of the
14  incident reports prepared by WMATA after what
15  happened, that suggest Ms. Scott did anything
16  wrong?
17  MR. CHANDONNET: Objection. I'm going
18  to ask -- instruct him not to answer that as well.
19  BY MR. REGAN:
20  Q. Okay. Is WMATA aware of any evidence
21  that Ms. Scott stood up while the train was in
22  motion?

**Page 31**

1  THE WITNESS: You want me to answer?
2  MR. CHANDONNET: You can answer if you
3  know.
4  A. Say it one more time, I'm sorry.
5  BY MR. REGAN:
6  Q. Yeah, is WMATA aware of any information
7  at all demonstrating that Ms. Scott stood up while
8  the train was in motion?
9  A. I'm not aware of any.
10  Q. Okay. Well, you're speaking on behalf
11  of WMATA today. You've investigated, you've
12  looked at all the documents, right, all the
13  incident reports. You've actually gone and
14  reviewed all those things. And you, speaking as
15  WMATA, are not aware of any evidence; right?
16  A. Correct.
17  Q. One of the witnesses explicitly noted
18  that the train operator never made any
19  announcement that the train was going to be in
20  motion again. Do you remember that or do you want
21  me to pull it up?
22  A. I remember -- I remember seeing that,

**Page 32**

1  yes.
2  Q. Is WMATA aware of any evidence that
3  would contradict that; in other words, is there
4  any evidence that WMATA is aware of that the train
5  operator announced the train would be moving
6  before she moved it forward again?
7  A. No.
8  Q. Bear with me one minute. All right. We
9  are back to Exhibit 3, which begins on WMATA 18.
10  Do you still have that in front of you?
11  A. I do. I just have to go to it. All
12  right.
13  Q. All right. So about halfway down that
14  page, just underneath that table, there's a line
15  that says, "Incident Type," and it says,
16  "Slip/fall, vehicle in motion." See that?
17  A. Yes.
18  Q. Is that how all incidents, such as the
19  one that happened to Ms. Scott, are classified,
20  "Slip/fall, vehicle in motion"?
21  A. I can't recall because I haven't done an
22  SMS recently. We have a drop down. So I have to