UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **CAROL W. SCOTT**, <br><br> Plaintiff, <br><br> v. <br><br> **WASHINGTON METROPOLITAN AREA TRANSIT AUTHORITY**, <br><br> Defendant. | Case No. 22-cv-601 (CRC) |

**OPINION AND ORDER**

Before the Court is Defendant Washington Metropolitan Area Transit Authority ("WMATA")'s motion in limine to exclude the report and testimony of Plaintiff's expert, Dr. Carl Berkowitz. Having fully considered the motions and Plaintiff's opposition, the Court will grant WMATA's motion in part and deny it in part.

I.  **Background**

The Court's July 1, 2024 opinion denying the parties' cross-motions for summary judgment fully recounted the factual and procedural background of this case, so the Court will only provide a brief summary here. See Mem. Op., ECF No. 34, at 2–4.

Plaintiff Carol W. Scott boarded a WMATA Orange Line train en route to McPherson Square on the evening of September 23, 2019. Id. at 1–2. When the train pulled into her station and came to a complete stop, Scott reportedly heard an announcement: "McPherson Square, doors opening on the left." Id. at 2. Shortly after Scott rose from her seat to depart, "[t]he train jerked forward" without prior notice. Id. (citing WMATA MSJ, Ex. A ("Scott Dep.") at 18:7.). Scott fell and suffered a proximal femur fracture that required surgery. Id. at 3.

Scott filed this action against WMATA in March 2022, alleging one count of negligence. Id. In particular, she claims that the train operator acted negligently by repositioning the train without prior notice after it had made a complete stop at McPherson Square Station and the operator had announced that doors were opening on the left. Id. In July 2024, the Court denied WMATA's motion for summary judgment and Scott's cross-motion for summary judgment. Id. at 20. In denying Scott's cross-motion, the Court observed that the expert report Scott offered from Dr. Berkowitz "failed to articulate any national standard of care." Id. at 16. Dr. Berkowitz's report relied on WMATA's Standard Operating Procedure ("SOP") ¶ 50.5.1.1, which instructs operators to first make an advisory warning before repositioning trains that have been improperly berthed at a station. Mem. Op. at 4. The Court concluded, however, that WMATA's internal operating standard alone did not establish a national standard of care. Id. at 16. And Dr. Berkowitz's failure to identify "any other transit authority that had the same or similar policy" was "fatal to establishing a national standard of care." Id. at 17.[1]

Trial is set for April 21, 2025. In advance of trial, WMATA filed two motions in limine. The motion that is the subject of this order seeks to exclude Plaintiff's expert, Dr. Berkowitz. See Mot. in Limine, ECF No. 42. Scott filed an opposition, and the Court now takes up the motion.

---

[1] Scott offered a supplemental affidavit from Dr. Berkowitz as an attachment to her reply brief, which opined that transit authorities in New York, Philadelphia, and Chicago adhere to the same national standard of care. Mem. Op. at 17. The Court declined to consider this tardy filing, however, because "WMATA ha[d] not had the opportunity to depose Dr. Berkowitz about its contents or retain its own expert" to respond to the supplemental report. Id. at 18.

2

## II. Legal Standards

WMATA argues that Dr. Berkowitz's proposed expert testimony fails to meet the reliability requirements of Federal Rule of Evidence 702 and Daubert v. Merrell Dow Pharm., Inc., 509 U.S. 579, 589 (1993). Rule 702 provides:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if . . . (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert's opinion reflects a reliable application of the principles and methods to the facts of the case.

"A district court has 'broad discretion in determining whether to admit or exclude expert testimony.'" Heller v. District of Columbia, 952 F. Supp. 2d 133, 139 (D.D.C. 2013) (citing United States ex rel. Miller v. Bill Harbert Int'l Constr., Inc., 608 F.3d 871, 895 (D.C. Cir. 2010)) (cleaned up).

## III. Analysis

WMATA objects to Dr. Berkowitz's testimony on the national standard of care governing whether a warning must be given before a stopped train repositions in the station. Mot. in Limine at 3. For the following reasons, the Court concludes that Dr. Berkowitz is qualified to testify as an expert on this issue.

After denying the parties' dueling motions for summary judgment, the Court gave Scott an opportunity to supplement her expert report on the national standard of care. Accordingly, Dr. Berkowitz prepared a supplemental report, which states that "[t]he standard practices of the New York City Metropolitan Transportation Authority, Chicago Transit Authority, Massachusetts Bay Transit Authority (Boston), and the Southeastern Pennsylvania Transportation Authority [("SEPTA")]" (Philadelphia) require train drivers to warn passengers

before restarting or repositioning an improperly berthed subway train. Mot. in Limine, Ex. E ("Supp. Report"), ECF No. 42-5, at 8. The report went on to provide further detail as to the New York City Transit Authority, Massachusetts Bay Transportation Authority, and Chicago Transit Authority policies requiring such announcements. Id. at 8–10. Dr. Berkowitz did not cite any internal operating policies or procedures to support his opinion, however. See id. After his preparation of the supplemental report, WMATA also deposed Dr. Berkowitz. Mot. in Limine, Ex. C ("Berkowitz Dep."), ECF No. 42-3. During his deposition, Berkowitz provided additional information about how he reached the opinions expressed in his supplemental report.

WMATA asks the Court to exclude Dr. Berkowitz's supplemental report and related testimony as unreliable because he "was unable to provide any support for his view about the[] standard of care" governing the other transit systems he cited. Mot. in Limine at 6. After all, says WMATA, Dr. Berkowitz "failed to cite to a single specific policy document from any of those transit systems in support of this assertion" or "provide any excerpts or specific references to the operating procedures of any of named transit systems, or any transit system." Id. at 7.

"In considering Rule 702 motions, the court assumes only a 'limited gate-keep[ing] role' directed at excluding expert testimony that is based upon 'subjective belief' or 'unsupported speculation.'" Heller, 952 F. Supp. 2d at 140 (citations omitted). "Rejection of an expert's testimony is the exception rather than the rule." Id. (alteration in original) (citation omitted). In cases such as these, "[t]he issue for the Court to determine is whether this is a case where [the expert's] assumptions amount to 'rampant speculation' and should be excluded, or whether his assumptions merely represent a weak factual basis for his testimony that is appropriately challenged on cross examination." Id. (alteration in original) (citation omitted). The trial court enjoys "considerable leeway in deciding in a particular case how to go about determining

whether particular expert testimony is reliable." Kumho Tire Co. v. Carmichael, 526 U.S. 137, 152 (1999).

Here, although Dr. Berkowitz did not support his opinions about other transit systems by reference to their written procedures, that omission alone does not disqualify him as an expert. "[A]n expert may be qualified on the basis of his or her practical experience." Khairkhwa v. Obama, 793 F. Supp. 2d 1, 11 (D.D.C. 2011). And "if experience or training enables a proffered expert witness to form an opinion which would aid the jury, in the absence of some countervailing consideration, his testimony will be received." Jenkins v. United States, 307 F.2d 637, 644 (D.C. Cir. 1962).

Dr. Berkowitz based his opinion on his over twenty years of experience working in the transportation industry. See Berkowitz Dep. at 29:7–12. He has worked directly with the New York Metropolitan Transportation Authority and other agencies, taught transportation safety courses to their personnel, and served on professional transit committees. See id. at 140:15–16, 141:3–9, 142:6–14. To form his opinions, he relied on his work experience at the New York City and Chicago Transit Authorities, id. at 133:3–4, 16–19, informal conversations with employees of the New York City Transit Authority and SEPTA, id. at 134:21–22, 148:6–8, and knowledge gleaned through his work on transit committees, id. at 135:4–9. Although he did not specifically identify the SEPTA employee with whom he communicated, he did name the New York Transit Authority retired operator with whom he spoke to confirm his opinion—Orlando Jimenez. Id. at 148:20.

Thus, although Dr. Berkowitz certainly could have been more thorough in his citation of sources, he has "set forth concrete bases for his expert testimony[.]" Sherrod v. McHugh, 334 F. Supp. 3d 219, 259 (D.D.C. 2018). And other courts in this district have qualified experts whose

opinions are based in part on "consultation with personnel" from relevant agencies. Id. Indeed, courts in this district have deemed reliable "a variety of types of experience-based experts, including fire investigators, accident-reconstruction experts, and, most notably, law-enforcement officials." Heller, 952 F. Supp. 2d at 141 (citing cases). In the Court's view, Dr. Berkowitz is of the same ilk as these experts. And he has justified his opinion enough that the Court cannot conclude it is "rampant speculation." Id. at 140. The Court's conclusion in this regard is bolstered by the fact that WMATA has apparently been "unable to name a single" transit authority that does not require prior warning before restarting or repositioning an improperly berthed subway train. Novak v. Cap. Mgmt. & Dev. Corp., 570 F.3d 305, 313 (D.C. Cir. 2009). WMATA's objections, at best, may suggest "a weak factual basis for [Dr. Berkowitz's] testimony[,]" which "is appropriately challenged on cross examination[,]" rather than excluded altogether as unreliable. Heller, 952 F. Supp. 2d at 140.

  WMATA also cites cases in which Dr. Berkowitz failed to establish a national standard of care on unrelated issues, or his testimony was otherwise limited. Mot. in Limine at 8, 16–17. As an initial matter, that courts have limited Dr. Berkowitz's testimony on unrelated topics is not relevant to the present question. See Opp'n, ECF No. 46, at 15. Similarly, Dr. Berkowitz's failure to offer testimony establishing a national standard of care related to bus drivers does not bear on the reliability of his testimony here. See Robinson v. Wash. Metro. Area Transit Auth., 941 F. Supp. 2d 61, 69–70 (D.D.C. 2013), aff'd, 774 F.3d 33 (D.C. Cir. 2014). Moreover, in the case on which WMATA principally relies, Dr. Berkowitz did not "cite actual examples of other metropolitan transit agencies that adhere to the policies and practices he characterized as standards." Id. at 70. Here, as just explained, he has. And even in WMATA's own principal case, "[t]he Court found that Dr. Berkowitz, who holds a Ph.D. in Transportation Planning and

6

Engineering and has over thirty years of experience as a public transportation engineer, was qualified as an expert in public transportation safety engineering" and permitted him to testify. Id. at 68.

If credited at trial, Dr. Berkowitz's testimony that along with the District of Columbia, the transit authorities of four major cities—New York, Philadelphia, Chicago, and Boston—require announcements before repositioning is sufficient to establish a national standard of care. "Under District of Columbia law, an expert testifying about a national standard of care must describe a specific standard rather than refer generally to safety and must show that the standard is accepted in the industry." Novak, 570 F.3d at 313 (citations omitted). Dr. Berkowitz has described a specific standard: that train drivers must warn passengers before restarting or repositioning an improperly berthed subway train. Supp. Report at 8. And he has "specifically named" four other major cities "that follow the practice," which is "sufficient to establish that the standard [Berkowitz] articulated [is] in effect at comparable facilities[.]" Novak, 570 F.3d at 313.

WMATA also argues that Dr. Berkowitz's testimony on unrelated topics, including jerk rates, the OSH Act, common carrier duties, and hazard management, indicate that his testimony in general is "entirely unfounded." Mot. in Limine at 9–14. Yet Scott clarifies that at trial, Dr. Berkowitz will offer testimony on "precisely one subject:" "the national standard of care require[ing] that before restarting/repositioning an improperly berthed subway train, a train driver must first warn passengers." Opp'n at 14. WMATA's objections to Dr. Berkowitz's testimony on other topics therefore need not detain the Court for long. For the avoidance of doubt, however, the Court will preclude Dr. Berkowitz from testifying about these unrelated topics at trial.

7

The Court's conclusion in this regard largely accords with the decision of another court that recently considered the same question. Over WMATA's objection, a court in the Eastern District of Virginia permitted Dr. Berkowitz to testify "about the standard of care for a train operator who needs to re-berth a train that has stopped partially within a train station platform." Thurston v. WMATA, No. 24-cv-832, ECF No. 61, at 7 (E.D. Va. Mar. 14, 2025). Although, as here, WMATA argued that Dr. Berkowitz's opinions were not supported by a sufficient factual basis, the Court found that his opinions were sufficiently based in "his experience having worked for various transit authorities, his belonging to transit-related committees, and his long-time engagement with the public transportation community." Id. The court noted as well that Dr. Berkowitz "speaks with others in the transit industry about safety" and that his expert opinions "reflect his prior reading of transit systems' standard operating procedures and training manuals." Id. The Court did not, however, permit Dr. Berkowitz to testify about "the other topics included in his expert report, including falling, walking and falling, jerk rates, failures, and national standards of care." Id.[2]

## IV. Conclusion

For the foregoing reasons, it is

**ORDERED** that [42] WMATA's Motion in Limine to Exclude Dr. Berkowitz is denied in part and granted in part; and it is further

**ORDERED** that Dr. Berkowitz may testify at trial about the national standard of care concerning whether a train driver must first warn passengers prior to restarting or repositioning an improperly berthed subway train; and it is further

---

[2] Virginia, unlike D.C., does not recognize a national standard of care in common carrier tort actions, so the court explained that "it is inconsequential whether Dr. Berkowitz can properly articulate it." Id. at 5.

8

**ORDERED** that Dr. Berkowitz may not testify at trial about jerk rates, the OSH Act, any section of the United States Code that Dr. Berkowitz asserts establish common carrier duties, or hazard management.

**SO ORDERED**.

CHRISTOPHER R. COOPER
United States District Judge

Date: <u>April 15, 2025</u>