IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| CAROL W. SCOTT,<br>    Plaintiff,<br><br>v.<br><br>WASHINGTON METROPOLITAN<br>AREA TRANSIT AUTHORITY,<br>    Defendant. | Case No.: 1:22-cv-00601 CRC |

**DEFENDANT WASHINGTON METROPOLITAN AREA TRANSIT AUTHORITY'S REPLY MEMORANDUM IN SUPPORT OF ITS RENEWED MOTION FOR JUDGMENT AS A MATTER OF LAW AND, IN THE ALTERNATIVE, MOTION FOR A NEW TRIAL**

Defendant Washington Metropolitan Area Transit Authority ("WMATA"), by and through undersigned counsel, moves for judgment in favor of Defendant on Plaintiff's claim of negligence pursuant to Federal Rule of Civil Procedure 50 and, in the alternative, moves for a new trial pursuant to Federal Rule of Civil Procedure 59(a). In response to Plaintiff's opposition, ECF 74, WMATA states the following:

**I.   Argument**

   **A.   *Plaintiff Did Not Establish a National Standard of Care***

At the outset, Plaintiff does not dispute that she was required to establish the applicable national standard of care through expert testimony. *See Montgomery v. Wash. Metro. Area Transit Auth.,* No. 23-463, 2025 U.S. Dist. LEXIS 42101, at *11 (D.D.C. March 6, 2025) (citing *Tripmacher v. Starwood Hotels & Resorts*, 277 F. Supp. 3d 104, 109-10 (D.D.C. 2017) (requiring expert testimony on the standard of care where, "[w]ithout expert testimony, . . . the jury would be left with nothing but 'sheer speculation'")). At trial, Ms. Scott offered Dr. Carl Berkowitz as an expert in "transportation safety engineering with respect to whether the national standard of care requires Metro to provide a safety warning under the circumstances of Ms. Scott's injury on

September 23, 2019." Ex. E, Testimony of Dr. Carl Berkowitz, Trial Tr. vol. 2 at 334:24-335:4. Dr. Berkowitz's testimony at trial demonstrated that: (1) his opinions do not satisfy the requirements of Federal Rule of Evidence 702; and (2) he did not establish a national standard of care.

> **i. Dr. Berkowitz Did Not Provide a Sufficient Basis for His Findings and Opinions Pursuant to Federal Rule of Evidence 702**

WMATA does not dispute in its Motion that the Court may qualify an expert on the basis of his or her practical experience. *Khairkhwa v. Obama*, 793 F. Supp. 2d 1, 11 (D.D.C. 2011). Indeed, this Court, in denying WMATA's motion to exclude Dr. Berkowitz, found that his experience provided a sufficient foundation for Plaintiff to proffer him as an expert witness at trial. ECF 52 at 3. However, the Court did not find that Dr. Berkowitz's testimony must be credited at trial. ECF 52 at 7. Rather, to credit his trial testimony, Dr. Berkowitz "'must explain how that experience leads to the conclusion reached, why that experience is a sufficient basis for the opinion, and how that experience is reliably applied to the facts.' Fed. R. Evid. 702 advisory committee's note (2000)." *Khairkhwa v. Obama*, 793 F. Supp. 2d 1, 11 (D.D.C. 2011).

Dr. Berkowitz's trial testimony did not provide a sufficient basis for his findings and opinions. He admitted that he did not review, and could not review, the standard operating procedures for Philadelphia, San Francisco, Boston, and Chicago. Ex. E, Trial Tr. vol. 2 at 355:9-359:7. Unable to review what Dr. Berkowitz described as "proprietary information," *id.*, Dr. Berkowitz did not explain how his experience led to *reliable* opinions about these transit systems. Dr. Berkowitz's experience riding transit systems, Ex. E, Trial Tr. vol. 2 at 342:10-22, and conversations with retired union representatives, Ex. E, Trial Tr. vol. 2 at 344:9-14, do not provide a sufficient basis for his opinion regarding a national standard of care. Instead of demonstrating experience with each transit system, or specialized knowledge on standards while

reberthing trains, Dr. Berkowitz based his opinions on a generalized "premise in engineering that if there's a hazard, you have to eliminate it. . . And we know that announcements on the trains are very key to ensuring the safety of passengers on the train." Ex. E, Trial Tr. vol. 2 at 337:21-338-4. He further clarified that his opinions were based on his belief that WMATA, as a common carrier, is the guarantor of safety of everybody in its transit system. Ex. E, Trial Tr. vol. 2 at 352:7-20. This does not satisfy the requirements of Federal Rule of Evidence 702 and his opinions and testimony at trial should not be credited.

   Additionally, the Court prohibited WMATA from cross-examining Dr. Berkowitz in front of the jury, the fact finders, on issues that go directly to Dr. Berkowitz's credibility. Plaintiff was permitted to present Dr. Berkowitz's long career as an expert witness, bolstering his credibility to the jury. Contrary to Plaintiff's assertion in her Opposition that "WMATA did not take the Court up on its offer" to *voir dire* Dr. Berkowitz, Pl. Opp. at 12-13, the Court's offer was to question Dr. Berkowitz outside the presence of the jury. Ex. E, Trial Tr. vol. 2 at 302:18-23. WMATA was unduly prejudiced when the Court denied WMATA the opportunity to fairly cross Dr. Berkowitz on that history and the number of times courts have questioned the reliability of his opinions. Cross examination on these issues would have been fully appropriate and not "an attempt to smear him in front of the jurors," Pl. Opp. at 13, because, as this Court is well aware, Dr. Berkowitz has a long history of courts characterizing his testimony and his opinions as speculative and conclusory, in part, arising from his failure or inability to connect his experience to his opinions.

   Finally, WMATA was unfairly prejudiced by the Court's decision to allow Dr. Berkowitz to supplement his opinions in a way that attempted to substantively address the deficiency of his disclosure. Plaintiff asserts that WMATA's opportunity to depose Dr. Berkowitz was sufficient to

mitigate any prejudice from his late supplemental report. However, Dr. Berkowitz's opinions continued to change *after* the deposition with no notice afforded to WMATA. Dr. Berkowitz's trial testimony that he had read the New York standard operating procedures was a new development after his deposition. Plaintiff did not notify WMATA of the update nor provide the materials Dr. Berkowitz reviewed to WMATA, as requested. This error profoundly impacted the trial of this case. Therefore, WMATA is entitled to a new trial.

### ii. Insufficient Evidence to Establish National Standard of Care

Dr. Berkowitz's testimony that his opinion is "within a reasonable degree of certainty" in his field does not establish a reliable foundation for his opinion. Dr. Berkowitz did not establish that other comparable transit systems followed his purported standard of care. As explained in greater detail in WMATA's Motion, Dr. Berkowitz did not establish that the transit systems in Philadelphia, San Francisco, Boston, and Chicago adopted the proffered national standard of care. Ex. E, Trial Tr. vol. 2 at 355:9-359:7. Dr. Berkowitz's finding that these systems adopted the proffered national standard of care depended on his supposition "that if Washington Metro and New York City Transit both have the exact same documentation, that it's pretty guaranteed that all the other systems are going to follow suit because New York City Transit and Washington Metro are among the leaders in innovation in transportation." Ex. E, Trial Tr. vol. 2 at 344:18-22.

In addition, Plaintiff's footnote no. 5 argues that the Court should draw a negative inference given that WMATA did not designate a standard of care expert, and goes as far as to state: "[i]f there existed a reputable expert who would have denied the existence of this commonsense national standard of care, wouldn't WMATA—of all litigants—found and retained him?" Pl. Opp. at 10 n.5. As WMATA argued at trial, and through briefing submitted during trial, no such negative inference exists because it is Plaintiff's duty to prove her case, including the

4

315353134v.1

standard of care. To allow argument and an inference as a result of a defendant's strategic decision to not retrain an expert is improper, inappropriate, and impermissible burden shifting. *See* ECF #55. Plaintiff's reliance on such a patently incorrect assertion here demonstrates why this Court should grant Defendant's motion.

"It is a plaintiff's burden to establish the standard of care by presenting evidence of the accepted professional conduct." *Macy's, Inc. v. H&M Constr. Co.*, 843 Fed. Appx. 841, 842 (9th Cir. 2021). There is no corresponding duty for a defendant to put forth its own expert on the standard of care – nor has Plaintiff, at trial, or in this Opposition, been able to point to any caselaw that would allow such negative inference or create such a duty to a defendant defending a negligence claim. In denying ECF 55 during trial, this Court cited *Merced v. McGrath*, No. 04-15560, 2005 U.S. App. LEXIS 22809 (9th Cir., Oct. 18, 2005). *See* Tr. Transcript Vol. 2, 244:10-245:9. Respectfully, *Merced* is a non-binding criminal case that is not comparable to this attempted negative inference in a civil tort case. Rather, the court in *Merced*, in three brief sentences, only stated that commenting on a defendant's failure to call witnesses was not contrary to *Griffin v. California*, 380 U.S. 609, 615 (1995) (holding that a prosecutor may not comment on a defendant's failure to testify). *Merced* provided no details on the type of expert in question, whether such an expert was of a kind that is readily available to all, or whether a defense expert was necessary to establish a specific burden, such as an affirmative defense. *Merced* does not stand for the proposition that the Court draw a negative inference here based on WMATA's decision not to designate a standard of care expert.

B. *Assumption of Risk*

    i. **The "Unusual and Extraordinary Force" Test Applies in This Circumstance.**

Plaintiff asserts, without further argument, that the Court did not err in failing to apply the "jerk jolt" doctrine, also known as the "unusual and extraordinary force" test. *See Robinson v. Wash. Metro. Area Transit Auth.*, 774 F.3d 33, 42 (D.C. Cir. 2014); *Boyko v. Wash. Metro. Area Transit Auth.*, 468 A.2d 582, 583-84 (D.C. 1983); *Wiggins v. Cap. Transit Co.*, 122 A.2d 117, 118 (D.C. 1956). Section B.1 of Plaintiff's Opposition merely recites the Court's prior ruling on WMATA's Motion for Summary Judgment. Plaintiff does not address WMATA's argument that the factual record at trial differed substantively from the record at the Motion for Summary Judgment, and as such, the Court's prior analysis no longer applied.

As stated in greater detail in section III.B.i. of WMATA's Motion, at the summary judgment stage, the Court was presented with Ms. Scott's deposition testimony that the operator announced "McPherson Square, doors opening on the left side" *after* the train came to a complete stop at the station. ECF 34 at 12. The Court found this testimony sufficient to create a genuine issue of fact for the jury regarding whether a reasonable person in Ms. Scott's shoes would have believed it was safe to alight. *Id.* However, the testimony at trial established that: (1) the announcement concerning the doors was made *before* the train stopped; (2) Metrotrains frequently reposition at the platform in their ordinary operation; (3) the doors chime to indicate that they are opening, and the doors did not chime prior to the train repositioning in this instance; and (4) Ms. Scott was aware this specific train would likely reposition after arriving at the platform. Plaintiff does not dispute these facts, of which the trial record contains ample evidence. Based on the facts the parties established at trial, the "unusual and extraordinary force" test was applicable in this circumstance pursuant to D.C. law.

> **ii. There is No Legally Sufficient Evidentiary Basis for a Reasonable Jury to Find the "Jerk" or "Sudden Start" Was of an Unusual and Extraordinary Force.**

Over WMATA's objection, the jury did not receive an instruction informing them that a common carrier is not liable for sudden starts, stops, jerks or jars which are no more than necessary or usual incidents of the operation of the vehicle, and that passengers assume such risks as part of their travel. *See* Final Jury Instructions, ECF 57; *see also* Joint Pretrial Statement, ECF 50, at 14 (WMATA requesting Standardized Civil Jury Instruction for the District of Columbia 8.05). As such, the jury could not properly apply the applicable law in reaching its verdict, and the verdict should not stand. This misapplication of the law regarding WMATA's duty as a common carrier is not a harmless error and, therefore, a new trial is warranted.

However, had the jury received this proper instruction, Plaintiff did not provide sufficient evidence at trial to support a finding that the movement of the Metrotrain was of unusual or extraordinary force. Ms. Swain's testimony was wholly insufficient to establish that the movement of the train was inconsistent with its ordinary operation. The D.C. Court of Appeals has held that "'unusual and extraordinary force' . . . cannot be inferred from 'mere descriptive adjectives and conclusions' alone." *Boyko v. Wash. Metro. Area Transit Auth.*, 468 A.2d 582, 584 (D.C. 1983)) (quoting Wiggins, 122 A.2d at 118). Further, Plaintiff does not dispute that Ms. Swain's testimony was contradicted by the testimony of Mr. Al Emondi, who said that it was only enough to "knock you off balance. . . if you were not ready for it." Ex. D, Al Emondi *De Bene Esse* Dep. at 10:5-11. The jury received no further evidence regarding the force of the train's movement, or any evidence to support a finding that the force was unusual or extraordinary.

Therefore, the Court should find that Defendant WMATA is entitled to judgment as a matter of law because the "unusual and extraordinary force" test applies in this circumstance, and

there was no evidence at trial that would permit a reasonable jury to find that the force was unusual or extraordinary. Alternatively, the failure to include the "jerk jolt" jury instruction proffered by WMATA was error and WMATA is entitled to a new trial for the failure to so instruct the jury. Joint Pretrial Statement, ECF 50, at 14 (WMATA requesting Standardized Civil Jury Instruction for the District of Columbia 8.05); Ex. H, Trial Tr. Vol. 3 at 492:10-499:11; 502:18-503:11.

### C. *Contributory Negligence*

Where the clear evidence shows that there is no legally sufficient basis for the jury to find for a plaintiff, such a verdict must be overturned. In light of uncontradicted evidence, it is clear that Ms. Scott was contributorily negligent as a matter of law. Thus, the Court should overturn the jury's verdict.

Plaintiff's Opposition misstates WMATA's argument – WMATA does not argue solely that it is contributorily negligent "(1) to stand up before hearing door chimes **or** (2) at any point in the process not be clinging to a handhold." Pl. Opp. at 16 (emphasis added). Plaintiff attempts to simplify the factual record in this case and ignores what WMATA actually asserts as grounds for judgment. Ms. Scott's actions and knowledge, when taken together, are clearly contributorily negligent. Ms. Scott had advance knowledge that the train likely would reposition. She was aware that the doors were not open or there were no chimes indicating the doors were opening. She knew that the train was not fully berthed. She was aware of her advanced age and physical capabilities. She stood with all of the previously mentioned knowledge, and without availing herself of any of the supports or handholds readily available to her.

Plaintiff also misstates the law. Contributory negligence is not a "quintessential jury issue," as Plaintiff asserts. Pl. Opp. at 16. WMATA admits that cases where judgment can be

8

granted as a matter of law on contributory negligence grounds are "rare," but they are not nonexistent. In fact, one of the cases that Plaintiff cites affirms the trial court's grant of summary judgment on grounds that the plaintiff's negligence contributed to her own death. *See Phillips v. Fujitec Am., Inc.*, 3 A.3d 324, 331 (2010). Plaintiff also cites a portion of *Wilson v. Prudential Fin.*, No. 03-2313(RMU), 2004 U.S. Dist. LEXIS 21786 (D.D.C. Oct. 18, 2004), that merely confirms that contributory negligence is often more commonly appropriate for a jury – not that contributory negligence *must* be a jury question.

WMATA is not asking the Court to impose a standard that requires passengers to "go through life timidly," *see* Pl. Opp. at 20 (internal citations omitted), but rather to apply the well-established standard held by this Court, that people must act with the reasonable prudence of an ordinary person and that a failure to do so bars legal recovery.

### D. Damages

Damages are an essential element of a negligence claim that Plaintiff must establish. "'While damages are not required to be proven with mathematical certainty, there must be some reasonable basis on which to estimate damages. . . . Damages may not be based on mere speculation and guesswork." *SEIU Nat'l Indus. Pension Fund v. Jersey City Healthcare Providers, LLC*, 358 F. Supp. 3d 12, 23 (D.D.C. 2019) (internal citations omitted). The only evidence the jury received regarding Plaintiff's medical expenses was based on guesswork and the suggestion of an amount from an inadmissible summary of medical bills.

Plaintiff's representation that "there was absolutely zero dispute as to the authenticity or dollar amount of the bills in question" is false. WMATA objected to the authenticity of the medical records and bills, and itemization of bills in its pretrial statement, on the record at the pretrial conference and at trial, and in a brief filed April 21, 2025 at the invitation of the Court.

315353134v.1

*See* Joint Pretrial Statement, ECF 50 at 9; Ex. J. Trial Tr. vol 1 at 195:9-200:2; WMATA's Brief in Support of its Objection to the Admission into Evidence of Plaintiff's Exhibit 16, Summary of Medical Expenses, ECF 56. In its Brief, WMATA stated that

> [t]he underlying medical records and bills are hearsay statements. To make them admissible, Plaintiff must show that the records are of the type are admissible under an exception to hearsay, such as the business records exception pursuant to Federal Rule of Evidence 803(6). Plaintiff did not present any testimony to establish that the records were kept in the course of a regularly conducted business activity, nor did she provide a records certification. Without these steps, Plaintiff did not lay the foundation necessary to demonstrate the admissibility, under the business records exception, of the underlying records or the summary of those records. *See United States v. Oros*, 578 F.3d 703, 708 (7th Cir. 2009) (citing *United States v. Samaniego*, 187 F.3d 1222, 1224 (10th Cir. 1999); *see also New York Life Ins. Co. v. Taylor*, 147 F.2d 297,300-301 (D D.C. 1944)(holding medical records not admissible under business records exception). Additionally, while not required, Plaintiff was on notice that WMATA objected to both the summary of medical expenses and the underlying medical records on the grounds of authenticity, lack of foundation, and hearsay.

ECF 56 at 3. The Court agreed with WMATA and sustained its objection to the admission of Plaintiff's summary of medical expenses, stating "there's no stipulation. There's no custodian. There's nothing to authenticate the bills." Ex. J. Trial Tr. vol. 2 at 243:7-8.

Plaintiff then testified to her recollection of the total amount of her medical bills, which Plaintiff's counsel called a "guess" and drew Plaintiff's attention to the summary of medical expenses. Ex. J. Trial Tr. vol. 2 at 248:9-16. Plaintiff then testified about the amount listed in the summary, which was already determined to be inadmissible through Plaintiff because she did not prepare the summary, despite the lack of any foundation for the summary of unauthenticated medical bills. This testimony, riddled with foundational issues, was the only evidence the jury received regarding damages.

While testimony is evidence, this evidence is wholly insufficient to establish damages. Plaintiff's testimony alone, without the admission of the underlying medical bills, is insufficient

10

to establish that the medical expenses were causally related, necessary, or reasonable. Plaintiff directs the Court's attention to *Green v. United States Postal Service*, 589 F.Supp. 2d 58, 68 n.2 (D.D.C. 2008), which states:

> [i]n the District of Columbia, a plaintiff may establish the reasonableness of her past medical expenses "by proving the professional services rendered and the amount of the bill paid or incurred." *Nunan v. Timberlake*, 85 F.2d 407, 410 (D.C. Cir. 1936). In other words, a plaintiff generally need not provide additional evidence of the "reasonableness" of her expenses. *See Albano v. Yee*, 219 A.2d at 568 ("[I]t [is] proper to admit in evidence medical bills incurred by [the plaintiff] in the absence of testimony, other than hers, that the bills [are] reasonable and necessary.") (*citing Giant Food Stores. Inc. v. Bowling*, 202 A.2d 783, 784 (D.C. 1964)).

*Green* does not stand for the principle that Plaintiff's testimony regarding the total amount of medical expenses incurred is sufficient to prove the professional services rendered and their necessity and reasonableness. Rather, in *Green,* the plaintiff's bills were admitted into evidence and the court found that plaintiff's testimony about whether she would have engaged in the services, even without an injury, was relevant to reasonableness of the costs. *Id.* at 68-69. Here, Plaintiff did not testify about specific services she included in her total medical expenses. Rather, Plaintiff testified about a single amount listed on an inadmissible summary of bills. She also did not testify that the services were reasonable and necessary, as she has no basis for comparison or expertise on which to base that testimony. The jury received no information about what Plaintiff included within her medical expenses and no evidence to determine if the expenses were reasonable or necessary. There is no legally sufficient basis for the jury to find that the damages were established with reasonable certainty, as required by D.C. law. Therefore, there was no basis for the jury's award of damages.

### E. *Remittitur*

The jury verdict in this case is clearly so high as to shock the conscience, given that this verdict may not contain an award of punitive damages. Remittitur is appropriate where the verdict is "so large as to indicate the jury was swayed by passion, prejudice, corruption, or other improper influences or considerations." *Sigal Constr. Corp. v. Stanbury*, 586 A.2d 1204, 1220 (D.C. 1991). Plaintiff, in her Opposition, does not disagree with this standard. Instead, she simply asserts, without comparable cases, or cited authority, that this verdict does not shock the conscience. Respectfully, Plaintiff's argument fails.

Plaintiff presented evidence of only roughly $229,000 in medical damages. The jury returned a verdict of $1.6 million, almost seven times the damages that were presented. In *Richardson v. National Railroad Passenger Corp.*, No. 90-1592, 1992 U.S. Dist. LEXIS 1974, (D.D.C. 1992), the jury found damages of $500,000, and after evaluating comparative negligence, entered judgment for plaintiff in the amount of $440,000. That verdict was based solely on $39,124 in lost wages, given that there were no medical expenses submitted in the case. The court found that the $460,876 of the $500,000 was therefore pain and suffering damages, based on a 19% permanent disability. The court granted remittitur, finding the judgment excessive and reduced the damages to "175,000 total, giving plaintiff $154,000 in recovery after the calculation for contributory negligence." *Id.* at *4. Like the defendant in *Richardson,* WMATA is entitled to a remittitur.

## II.     Conclusion

WHEREFORE, for the reasons set forth above, Defendant Washington Metropolitan Area Transit Authority respectfully requests that the Court grant this Motion and enter judgment in favor of Defendant, or in the alternative, grant a new trial.

315353134v.1

| | |
|---|---|
| Date: June 26, 2025 | Respectfully submitted, |

                                    **WILSON, ELSER, MOSKOWITZ,
EDELMAN & DICKER, LLP**

                                    */s/ Jason R. Waters*
Jason R. Waters, Esq. (D.C. Bar No.: 491066)
Lauren Gilman, Esq. (D.C. Bar.: 90008050)
8444 Westpark Drive - Suite 510
McLean, VA 22102-5102
Telephone: (703) 245-9300
Facsimile: (703) 245-9301
Jason.Waters@wilsonelser.com
Lauren.Gilman@wilsonelser.com

Patricia H. Beall, Esq. (D.C. Bar No.: 992515)
1500 K Street, NW, Suite 330
Washington, D.C. 20005
Telephone: (202) 626-7660
Facsimile: (202) 628-3606
Patricia.Beall@wilsonelser.com
*Counsel for Defendant Washington
Metropolitan Area Transit Authority*

**WASHINGTON METROPOLITAN
AREA TRANSIT AUTHORITY**

*/s/ Laurie Hand*
Laurie Hand, Esq. (DC Bar No.: 435095)
Washington Metropolitan Area Transit Authority
Legal Department 7E
P.O. Box 23768
Washington, D.C. 20026
Telephone.: (202) 962-5063
Facsimile: (202) 962-2550
LAHand@wmata.com
*Counsel for Defendant Washington
Metropolitan Area Transit Authority*

13

315353134v.1

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on this 26th day of June, 2025 I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will then send notification of such filing to all counsel of record.

        */s/ Jason R. Waters*
        Jason R. Waters, Esq. (D.C. Bar No.: 491066)
        WILSON, ELSER, MOSKOWITZ,
        EDELMAN & DICKER, LLP
        8444 Westpark Drive - Suite 510
        McLean, VA 22102-5102
        Telephone: (703) 245-9300
        Facsimile: (703) 245-9301
        Jason.Waters@wilsonelser.com
        *Counsel for Defendant Washington*
        *Metropolitan Area Transit Authority*